# EXHIBIT 4.



September 19, 2014

*Privileged and Confidential*
*Attorney Work Product*

Jesse C. Klaproth, Esquire
Tucker Law Group, LLC
One Penn Center at Suburban Station
Suite 1700
Philadelphia, Pennsylvania 19103

Re:   <u>Security & Data Technologies, Inc. v. School District of Philadelphia, et al., U.S. District Court for the Eastern District of Pennsylvania, Civil Action No. 12-cv-02393</u>

Dear Mr. Klaproth:

You, on behalf of your client the School District of Philadelphia (the "School District"), have requested that I review the claims of Security & Data Technologies, Inc. ("SDT") in the above-captioned matter. Specifically, you have requested that I review and comment upon the damages claimed by SDT against the School District.

*Basis for Analysis*

The analysis and opinions in this report are based upon the information and documentation identified to date, my education, my experience in performing similar work, and documents in the record. I have a B.S.B.A in Accounting and I am a Certified Public Accountant, Certified Fraud Examiner, and Certified in Financial Forensics. I am employed as a Director in the Litigation Services Group of EisnerAmper LLP.

EisnerAmper LLP is an accounting and consulting firm that, among other things, provides business, economic, financial, and forensic consulting services to clients in a variety of industries. My curriculum vitae, including a list of all other cases in which I have testified as an expert during the last four years, is attached as Exhibit A.

EisnerAmper LLP's consulting services were performed in accordance with the American Institute of Certified Public Accountants ("AICPA") Statement on Standards for Consulting



Services and do not constitute an engagement to provide audit, review, compilation, or attest services as described in the pronouncements on professional standards issued by the AICPA.

In forming my opinion, I relied upon the documents specifically identified throughout this report and in the accompanying exhibits. The documents and information utilized in my analysis and report are the types of documents and information upon which experts in my field typically rely. Additional information, which could affect my analysis, may come to my attention during the course of this matter. Accordingly, I reserve the right to amend my analysis and this report should additional or updated information become available.

This report may be used by the School District and its counsel, The Tucker Law Group, LLC, only for the purposes of this legal matter. This report may not be disclosed, copied, published, or used, in whole or in part, without prior permission of EisnerAmper LLP except as ordered by legal process or court or competent jurisdiction. My firm is being compensated at a rate of $385 per hour for my time in this matter and the firm has expended a total of 38 hours to-date. My firm's compensation is not contingent upon the outcome of this litigation.

*Background*

SDT is a "Life Safety" company located in Newtown, Pennsylvania that provides, among other things, security, fire alarm and video surveillance systems and equipment.[1] SDT sells its services to both private and governmental entities. From 2007 to 2012, SDT performed services for the School District on approximately 35 contracts. The sizes of these contracts ranged from a low of $505 to a high of $569,718, with an average contract size over the period of approximately $71,000. SDT's total sales to the School District over the six years were $2,495,505.96.[2]

During 2010, the School District determined it needed to upgrade and/or replace security and surveillance systems at 19 schools that had been identified as "persistently dangerous" (the "Project"). In or about September 2010, the School District contacted SDT regarding its

---

[1] SDT website sdtinc.net.
[2] Deposition of K. Spressart, August 6, 2014, Exhibits SDT-4 and SDT-5.



Jesse C. Klaproth, Esquire
September 19, 2014
Page **3** of **10**

capability to perform the Project under the required time constraints.[3] After performing preliminary surveys of the schools covered by the Project, SDT submitted preliminary pricing, for equipment and SDT's services, to the School District in emails dated September 8, 2010[4] and September 14, 2010[5]. The preliminary pricing did not include installation work, most of which would be performed by other companies. In fact, SDT informed the School District that 67 percent of the project would be performed by Minority Business Enterprises ("MBE") and Women Business Enterprises ("WBE").[6]

At a meeting in or around mid-September 2010, SDT presented the findings from its survey of the 19 schools in the Project to the School District. During this meeting, SDT stated that it believed the total Project cost would be in the range of $4.5 million to $6 million.[7] However, at no time was SDT awarded a purchase order or other written agreement by the School District to perform the work on the Project. On or about October 20, 2010, the School Reform Commission approved the award of the contract for the Project to IBS Communications, Inc. ("IBS").[8] SDT has alleged that the award of the Project to IBS was racially motivated and is claiming damages for not being awarded the Project, including:

- Lost gross profit on the Project of $2,250,000[9];
- Lost gross profit on any add-on work; and
- Attorney fees and costs.[10]

---

[3] Deposition of K. Spressart, June 16, 2014, pages 107 – 112.
[4] Id., Exhibit D-3.
[5] Id.,Exhibit D-8.
[6] Id., Exhibit D-9.
[7] Id., Pages 187 – 188.
[8] Id., Exhibit D-12, Page 4.
[9] Id., Page 9.
[10] Plaintiff's Answers to Defendants Interrogatories, Page 10.



*Conclusions*

Based on the work performed and my analysis of the documents and information provided, it is my opinion that SDT's purported damages are unreliable and speculative for the following reasons.

1. SDT's use of gross profit margin as a measure of damages excludes any incremental Project costs which would have been recorded in general and administrative expenses;

2. SDT's application of gross profit percentage to the entire Project amount results in unreasonable markups on subcontractor costs.

3. The variability in SDT's historical gross profit percentages realized on School District work makes SDT's average gross profit percentage an unreliable predictor of the profit to be earned on the Project.

4. SDT failed to address the basic foundational elements for reasonably estimating its damages, if any, for not obtaining the Project, including:

    a. Preparing a proper estimate of the Project costs;

    b. Obtaining pricing from subcontractors;

    c. Evaluating the demands on operational and financial resources required by the Project; and

    d. Evaluating if its historical gross profit percentage is a reliable measure of gross profit on the Project.

*Work Performed*

1. Reviewed the following documents and/or information sources:

    - Amended Complaint;



- Depositions and related exhibits of Kenneth Spressart dated June 16, 2014 and August 6, 2014;
- SDT's website;
- Deposition and related exhibits of Jerome Paley dated July 9, 2014; and
- Plaintiff's Answers to Defendants' Interrogatories.

2. Reviewed and analyzed SDT's Job Contract Analysis reports attached to various depositions.

*Findings*

SDT's alleged damages are based on the following assumptions:

1. A $7.5 million budget for the Project; and
2. An alleged historic gross profit of 30 percent.[11]

Exhibit B is a compilation of SDT's Job Contract Analysis Reports for work performed both directly and as a subcontractor for the School District from January 1, 2007 through December 31, 2012.[12] Exhibit B has been sorted by contract amount and the following observations may be made from this data.

- The contracts range in size from $505 to $569,718.
- The average contract size over the six year period is $71,300.
- There appears to be little or no correlation between gross profit percentage and contract amount, date of contract or any other factor present on the Job Contract Analysis Reports.
- Gross profit percentages range from a negative or loss of 81.26 percent to a high of 91.88 percent.

---

[11] Deposition of K. Spressart, June 16, 2014, page 9.
[12] Source: Deposition of K. Spressart, August 6, 2014, Exhibits SDT-4 and SDT-5.



Jesse C. Klaproth, Esquire
September 19, 2014
Page **6** of **10**

- The standard deviation of the gross profit percentages is 38.26 percent.
- The average gross profit percentage is 36.76 percent.

The Project contract amount was $7,500,000, which is 13 times larger than the largest project SDT had performed for the School District up to that time. SDT stated to the School District that 67 percent of the work would be performed by MBE and WBE subcontractors. Consequently SDT's work, at most, would have been 33 percent of the Project contract amount or $2,475,000, which is over four times larger than SDT's largest contract with the School District. In fact, all of SDT's contracts for the School District from 2007 through 2012 totaled $2,495,506 or approximately $20,000 more than its portion of the Project.

SDT has two foundational assumptions in its damages calculation. First, SDT has assumed that it would have achieved its alleged average gross profit percentage on the full value of the Project contract. Second, SDT has assumed that average gross profit is the proper measure of its damages. Each of these assumptions is flawed and each overstates SDT's purported damages.

SDT Assumption 1 – SDT Would Have Achieved its Historical Average Gross Profit Percentage on the Entire Project

SDT has assumed that a gross profit of 30 percent was reasonable on the entire contract. This percentage or margin is based on SDT's "historical profit margin."[13] SDT further defines profit margin to mean gross profit margin.[14] Exhibit B presents SDT's alleged gross profit percentage on School District contracts, indicating an average of 36.76 percent. This would seem to compare favorably and support the gross profit percentage used by SDT to calculate its damages. However, as shown on Exhibit B, SDT's School District work has a wide range of gross profit percentages, from a negative 81.26% to positive 91.88%, with what appears to be significant variability. The standard deviation,

---

[13] Plaintiff's Answers to Defendants Interrogatories, Page 10.
[14] Deposition of K. Spressart, August 6, 2014, Pages 9-10.



which measures the distribution of the individual gross profit percentages around the average, is 38.26%, which is higher than the average gross profit percentage. A standard deviation higher than the average generally indicates that the average is not a representative or normal measure of the data. In other words, the variability in SDT's historical gross profit percentages indicates that the average gross profit percentage is an unreliable basis for determining the profit that would have been earned on the Project.

SDT has also applied its historical gross profit percentage to the entire $7.5 million Project value. A 30 percent gross profit equates to a markup on cost of 42.86 percent. Given that the School District warned SDT that it would "…solicit pricing from others to ensure that we have the best pricing"[15], it is difficult to accept that SDT would have achieved a markup of over 40% on the entire Project. Even if SDT could have achieved a 30 percent gross profit on equipment and its own services, it is not feasible that SDT could have applied a comparable markup on subcontractor work. As stated earlier, at least 67 percent or $5,025,000 of the Project value was to be given to subcontractors. A subcontractor has profit and overhead built into its pricing to a prime contractor. Assuming the subcontractor's markup was 15 percent, 10 percent for overhead and 5 percent for profit, the School District would have paid a total markup on subcontractor work of over 64 percent after SDT's markup. This level of markup is high for the construction industry, particularly for contracts involving government entities. To put this in perspective the School District would be paying $5,025,000 for subcontractor work with a cost of $3,059,000. For the construction industry, a more typical markup on subcontractor work would be in the 5 percent to 10 percent range.

SDT also stated that it never prepared an actual estimate of the number of staff the project would have required or the number of hours it would have expended on the Project.[16] The markup on subcontractor work was also not considered by SDT because "we [SDT]

---

[15] Id., June 16, 2014, Exhibit D-3.
[16] Deposition of K. Spressart, June 16, 2014, Pages 39-40.



didn't get that far into it."[17] In fact, SDT's Vice President of Sales stated "we had not finalized anything. Nothing was finalized on this job as far as cost, sale price…so that's [gross profit margin] just a target we were looking for."[18] Without developing a cost estimate that quantifies the required labor, material and equipment resources as well as soliciting bids from subcontractors, any estimate of the profit to be made on this or any other project is purely speculation. The level of speculation only increases when one considers that the Project was many times larger than any contract that SDT had previously performed and would therefore have impacted its overall operations in ways not previously considered or experienced by SDT.

SDT Assumption 2 – Gross Profit is the Proper Measure of Damages

Gross profit is net sales less the cost of goods sold.[19] In the context of the Project, gross profit is the contract price less the direct cost to SDT of performing the contract. Direct costs are costs that can be clearly associated with a specific project, activity or product[20], i.e. the equipment and services provided in completing the Project. Gross profit does not include general and administrative costs such as building rent, interest, utilities, taxes or officer salaries. General and administrative expenses are deducted from gross profit to arrive at net income.

SDT has apparently never performed a contract for the School District of the size and scope of the Project. Therefore, it cannot be assumed that SDT had the staff, financial resources, or overall capability to effectively and efficiently manage the Project. A contract over 13 times the size of SDT's then largest contract for the School District would have burdened all areas of SDT's operations and finances. The fast-track nature of

---

[17] Deposition of K. Spressart, August 6, 2014, Page 22.
[18] Deposition of K. Spressart, June 16, 2014, Page 223.
[19] www.accountingtools.com
[20] www.accountingtools.com.



the Project would have only increased the strain on SDT's resources. This is not to say that SDT could not have accomplished the Project, only that the project would have created inefficiencies in SDT's operations leading to additional costs not considered in SDT's damages, such as:

- Increased overtime costs;
- Unbillable direct labor costs;
- Wasted materials and supplies;
- Additional interest expense;
- Additional office expenses; and
- Impacts to other ongoing projects.

SDT's damages methodology should consider all costs incurred as a result of the project. By using gross profit as the basis for its damages, SDT only considers additional direct contract costs. Any additional cost of the Project that is part of general and administrative expense is ignored by SDT's damages calculation.

In conclusion, SDT has assumed, without basis, that its historical gross margin was achievable on the full amount of the Project and that gross margin is the proper basis for measuring its alleged damages. These assumptions have been made despite the fact that SDT:

- Never prepared an estimate of the actual cost of performing the Project;
- Failed to quantify the demands which would have been placed on its financial and operational resources;
- Never solicited pricing from subcontractors which would have accounted for 67 percent of the costs of the project; and
- Failed to assess whether it historical gross profit percentage was a reliable indicator of the profit it could reasonably expect on the Project.



Without addressing these considerations, it would be impossible for me or anyone to reliably calculate what, if any, profits SDT would have realized if it had been awarded the Project. Consequently, SDT's damage methodology is unreliable and its alleged damages are speculative.

\*   \*   \*   \*   \*   \*

The procedures performed were limited to those described herein based on the documents provided to date and other information obtained.  Information obtained subsequent to the date of this report may affect this analysis and this effect may be material.  If requested, I will update my analysis.

My procedures were performed solely with respect to the above referenced litigation.  This report is not to be reproduced, distributed, disclosed or used for any other purpose.

Very truly yours,

EISNERAMPER LLP

*[signature: Tim Van Noy]*

_____

Tim Van Noy, CPA, CFE





**Tim Van Noy**
Director
timothy.vannoy@eisneramper.com
p  215.881.8118
f   215.881.8340

**Certifications**
- CPA
- CFE
- CFF

**Specialties**
- Construction Litigation
- Forensic Investigation

**Professional Activities**
- AICPA
- PICPA
- ACFE

**Community Activities**
- School Board Member-Clearview Regional

Tim Van Noy is a Director with EisnerAmper LLP. Tim has extensive experience in providing litigation support services, specializing in construction disputes, damage measurement, forensic accounting and investigations. He has testified as an expert witness in civil and criminal matters in state and federal courts. He is a Certified Public Accountant and holds designations as a Certified Fraud Examiner (CFE) and Certified in Financial Forensics (CFF).

Tim has over 25 years of experience in construction disputes and investigations on a wide variety of domestic and international contracts including: highway, bridge and dam construction; high-speed rail and commuter rail projects; commercial, industrial and institutional building construction and renovation; utility and cogeneration projects; residential development; and shipbuilding. On these projects, he has performed cost verifications, reviewed and assessed change orders, and analyzed damage claims related to cost overruns, defective design, extra work, acceleration, delay, lost productivity, and additional field and home office overhead. Tim has also assisted the U.S. Department of Justice in criminal and civil false claims investigations and has investigated fraud allegations for private owners.

In addition to construction matters, Tim's forensic accounting experience includes civil litigation and fraud investigation. He has analyzed damages related to lost profits, breach of contract, lender liability, wrongful termination, trade secrets, and red lining. The fraud issues investigated have included fraudulent financial statements, fraudulent statutory reporting, disbursements, procurement, FCPA compliance, corruption, fraudulent loan underwriting, and embezzlement. Tim has also assisted the U.S. Department of Justice in a criminal investigation related to financial statement fraud.

Tim has presented on topics related to fraud investigation and construction claims to various industry associations, including the American Institute of Certified Public Accountants, Construction Financial Management Association, Construction Management Association of America and the American Accounting Association. He has also presented on the topic of investigating fraud and corruption on major infrastructure projects to The World Bank and to the Ministry of Justice of the Royal Government of Thailand.

Prior to joining EisnerAmper LLP, Tim spent ten years managing his own consulting practice. He is a former partner at a Big Four accounting firm and has served as the Chief Financial Officer for an infrastructure design and construction management company. Tim has also functioned as an owner's representative on construction projects, designed electrical systems for Navy ship overhauls, and spent several years working in the construction trades. Tim graduated with Honors, receiving a degree in Accounting from Old Dominion University.



Exhibit A
Page 2

**Work History**
    EisnerAmper, LLP, 2009 to present - Director
    Van Noy & Co., LLP 1999 – 2009, Partner
    InterArch, 1998 to 1999 - Director of Operations
    Urban Engineers, Inc., 1996 to 1998 - Chief Financial Officer
    Price Waterhouse, (1985 to 1996) -Partner, Litigation Services, 1995 to 1996

**Professional Affiliations**
    American Institute of Certified Public Accountants
    Pennsylvania Institute of Certified Public Accountants
    Association of Certified Fraud Examiners

**Testimony Last Five Years**

Deposition testimony in the matter Meridian Engineering Company v. The United States, United States Court of Federal Claims; July 18, 2013.

Arbitration testimony in the matter ERG Construction, Inc. v. Delric Construction Company, Inc., American Arbitration Association; March 13, 2013.

Deposition testimony in the matter Fish Net, Inc., trading as That Fish Place-That Pet Place v. ProfitCenter Software, Inc. and Systemax, Inc., U.S. District Court for the Eastern District of Pennsylvania; June 13, 2012.

Trial testimony in the matter International Cartridge Corp. v. Kilgore Flares Company, LLC, SinterFire, INC., Daniel S. Yaich, and Joseph S. Coury, Pennsylvania Common Pleas Court, Jefferson County; June 29, 2011.

**Articles Last Ten Years**

Live presentation to the Institute of Internal Auditors, Philadelphia Chapter, Spring Conference – Foreign Corrupt Practices Act and UK Bribery Act - 2013

Live presentation to the Florida Institute of CPA's – Managing Fraud Risk in Construction and Real Estate Development - 2012

Live presentation to the Bucks County Bar Association – Occupational Fraud and Abuse – 2011

Live presentation to the American Institute of Certified Public Accountants, National Forensic Accounting Conference – Construction Damages – 2011

Live presentation to the Construction Financial Management Association – Managing Fraud Risk: Identifying and Preventing Corruption Schemes in Construction Companies - 2010

Live presentation to the Ministry of Justice of the Royal Government of Thailand - Investigating Fraud and Corruption on Major Infrastructure Projects – 2008

Audio conference presentation for Business Publishers, Inc. entitled: Unabsorbed Home Office Overhead Recovery - 2008

Exhibit B

## SDT Job Contract Analysis Report
### Projects With Philadelphia School District - Direct Contract and as Subcontractor
### January 1, 2007 through December 31, 2012

| Job | Name | Contract Amount | Current Estimated Costs | Revised Project Costs | Gross Profit | Gross Profit % | Cost To-Date | Percent Complete | Billed To-Date | Percent Billed | Revenue Recognized | Payments Received | Over-Billed | Under-Billed | Backlog | Sales Rep | Contract Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3384SDP | SCH DIST OF PHILA-LIBRARY R131 | $ 505.00 | $ 415.00 | $ 915.36 | $ (410.36) | -81.26% | $ 1,429.79 | 156.20% | $ 505.00 | 100.00% | $ 788.81 | $ 505.00 | $ - | $ 283.81 | - | DL | 11/23/07 |
| 3385SDP | SCH DIST OF PHILA-SRC RM# 101 | 526.00 | 430.00 | 878.71 | (352.71) | -67.06% | 878.71 | 100.00% | 526.00 | 100.00% | 526.00 | 526.00 | - | - | - | DL | 11/23/07 |
| 3599SDP | SCH DIST OF PHILA-PSD WIRELESS | 580.00 | 427.00 | 76.26 | 503.74 | 86.85% | 76.26 | 100.00% | 580.00 | 100.00% | 580.00 | 580.00 | - | - | - | DL | 04/09/08 |
| 3727SDP | RE-ENGAGEMENT CTR - S D P | 1,550.00 | 952.00 | 635.79 | 914.21 | 58.98% | 635.79 | 100.00% | 1,550.00 | 100.00% | 1,550.00 | 1,550.00 | - | - | - | DL | 06/25/08 |
| 4559PSD | PSD-ADDT'L FCWX CLIENT STATION | 2,233.50 | 1,270.00 | 1,050.00 | 1,183.50 | 52.99% | 1,110.86 | 105.80% | 2,233.50 | 100.00% | 2,363.04 | 2,233.50 | - | 129.54 | - | XS | 07/30/10 |
| 4454PSD | ELLIOT-LEWIS CO ADD TO CONF RM | 2,300.00 | 771.00 | 618.98 | 1,681.02 | 73.09% | 618.98 | 100.00% | 2,300.00 | 100.00% | 2,300.00 | 2,300.00 | - | - | - | CF | 06/09/10 |
| 3439SDP | SCH DIST OF PHILA - HR RM 222 | 2,535.00 | 1,949.00 | 1,479.14 | 1,055.86 | 41.65% | 1,479.14 | 100.00% | 2,535.00 | 100.00% | 2,535.00 | 2,535.00 | - | - | - | DL | 12/14/07 |
| 3440SDP | SCH DIST PHIL-EMPLY HLTH SRVC | 2,535.00 | 1,949.00 | 1,398.51 | 1,136.49 | 44.83% | 1,398.51 | 100.00% | 2,535.00 | 100.00% | 2,535.00 | 2,535.00 | - | - | - | DL | 12/20/07 |
| 3600SDP | SCH DIST OF PHILA ADDL READER | 2,790.00 | 2,132.00 | 723.89 | 2,066.11 | 74.05% | 723.89 | 100.00% | 2,790.00 | 100.00% | 2,790.00 | 2,790.00 | - | - | - | DL | 04/09/08 |
| CC23292 | 15TH STREET ADD'L READER | 4,471.00 | 3,488.00 | 3,248.85 | 1,222.15 | 27.34% | 3,248.85 | 100.00% | 4,471.00 | 100.00% | 4,471.00 | 4,471.00 | - | - | - | DL | 10/03/08 |
| 3665SDP | 440 BLDG INTERCOM 15TH ST PSD | 4,650.00 | 3,475.00 | 3,392.52 | 1,257.48 | 27.04% | 3,165.99 | 93.32% | 4,650.00 | 100.00% | 4,339.38 | 4,650.00 | 310.62 | - | - | DL | 05/20/08 |
| 4319PSD | PSD/ENG&CAD-FIR TWR ACC CTR DR | 5,544.00 | 2,784.00 | 6,630.00 | (1,086.00) | -19.59% | 42,488.28 | 640.85% | 5,544.00 | 100.00% | 35,528.72 | 5,544.00 | - | 29,984.72 | - | DL | 01/28/10 |
| 4301PSD | PSD-3RD FLR PORTAL *B* | 6,565.00 | 4,808.00 | 3,707.99 | 2,857.01 | 43.52% | 3,824.01 | 103.13% | 6,565.00 | 100.00% | 6,770.48 | 6,565.00 | - | 205.48 | - | DL | 01/13/10 |
| CC43571 | PSD-440 N BROAD ST-STAIR TWR | 10,285.00 | 5,591.00 | 6,845.66 | 3,439.34 | 33.44% | 6,845.66 | 100.00% | 10,285.00 | 100.00% | 10,285.00 | 10,285.00 | - | - | - | KS | 09/27/10 |
| 4031 SDP | CCTV DRWINGS 5 ADDL PHILA SCH | 12,160.00 | 5,622.00 | 987.00 | 11,173.00 | 91.88% | 2,087.00 | 211.45% | 12,160.00 | 100.00% | 25,712.32 | 12,160.00 | - | 13,552.32 | - | DL | 04/15/09 |
| 3383SDP | SCH DIST OF PHILA-TRAINING LAB | 17,925.00 | 14,117.00 | 16,630.45 | 1,294.55 | 7.22% | 13,364.20 | 80.36% | 17,925.00 | 100.00% | 14,404.53 | 17,925.00 | 3,520.47 | - | - | DL | 11/23/07 |
| 4815PSD | PSD-SECURITY REAR BASEMENT | 19,525.00 | 14,006.00 | 15,977.89 | 3,547.11 | 18.17% | 14,381.89 | 90.01% | 19,525.00 | 100.00% | 17,574.45 | 19,525.00 | 1,950.55 | - | - | KS | 05/31/11 |
| 5000PSD | PHILA SCHL DIST MAINT AGR 2012 | 25,000.00 | 13,750.00 | 3,741.98 | 21,258.02 | 85.03% | 8,416.98 | 224.93% | 25,000.00 | 100.00% | 56,232.50 | 25,000.00 | - | 31,232.50 | - | KS | 02/17/12 |
| 3433SDP | SCH DIST OF PHILA -S&M AGRMNT | 53,589.00 | 31,390.00 | 38,823.39 | 14,765.61 | 27.55% | 38,823.39 | 100.00% | 53,589.00 | 100.00% | 53,589.00 | 53,589.00 | - | - | - | DL | 12/19/07 |
| 5046PSD | PSD-440 N BROAD TECH ED SEC | 54,820.00 | 38,872.00 | 11,777.33 | 43,042.67 | 78.52% | 24,400.81 | 207.18% | 54,820.00 | 100.00% | 113,576.08 | 54,820.00 | - | 58,756.08 | - | JS | 05/04/12 |
| 4259SDP | SCHOOL DIST. OF PHILA | 56,311.57 | 35,255.00 | 26,997.29 | 29,314.28 | 52.06% | 27,022.28 | 100.09% | 56,311.57 | 100.00% | 56,362.25 | 56,311.57 | - | 50.68 | - | KS | 11/30/09 |
| 3892PSD | CCTV DRWG LAYS 41-60 PHILA SCH | 60,820.00 | 28,440.00 | 6,637.00 | 54,183.00 | 89.09% | 7,584.75 | 114.28% | 60,820.00 | 100.00% | 69,505.10 | 60,820.00 | - | 8,685.10 | - | DL | 12/08/08 |
| 3896PSD | CCTV DRWNGLAYS 21-40 PHILA SCH | 60,820.00 | 28,440.00 | - | 32,380.00 | 53.24% | 6,641.25 | 23.35% | 60,820.00 | 100.00% | 14,201.47 | 60,820.00 | 46,618.53 | - | - | DL | 12/08/08 |
| 3897PSD | CCTV DRWG LAYS 61-80 PHILA SCH | 60,820.00 | 28,520.00 | 9,446.25 | 51,373.75 | 84.47% | 9,446.25 | 100.00% | 60,820.00 | 100.00% | 60,820.00 | 60,820.00 | - | - | - | DL | 12/03/08 |
| 4942PSD | PSD-SWENSON SKILLS CTR CCTV | 61,000.00 | 50,590.00 | 64,185.37 | (3,185.37) | -5.22% | 64,405.37 | 100.34% | 61,000.00 | 100.00% | 61,207.40 | 61,000.00 | - | 207.40 | - | TD | 11/30/11 |
| 3894PSD | CCTV DRWNG LAYS 1-20 PHILA SCH | 61,690.00 | 28,880.00 | 50,373.65 | 11,316.35 | 18.34% | 72,469.90 | 143.86% | 61,690.00 | 100.00% | 88,747.23 | 61,690.00 | - | 27,057.23 | - | DL | 12/08/08 |
| 3893PSD | PHILA SCH DIST SOFTWARE UPGRDE | 68,250.00 | 40,950.00 | - | 27,300.00 | 40.00% | 199.00 | 0.49% | 68,250.00 | 100.00% | 334.43 | 68,250.00 | 67,915.57 | - | - | DL | 12/08/08 |
| 4643PSD | PHILA SCHL DIST CORE STRNG #4 | 120,988.76 | 81,001.00 | 69,235.02 | 51,753.74 | 42.78% | 69,337.78 | 100.15% | 120,988.76 | 100.00% | 121,170.24 | 120,429.66 | - | 181.48 | - | TD | 10/29/10 |
| 4343PSD | PSD CORE SITES RING #2 | 135,337.05 | 105,380.00 | 86,744.10 | 48,592.95 | 35.91% | 87,617.10 | 101.01% | 135,337.05 | 100.00% | 136,703.95 | 135,337.05 | - | 1,366.90 | - | TD | 03/04/10 |
| 4944PSD | PSD-JUANITA PARK ACADEMY CCTV | 143,000.00 | 131,298.00 | 131,627.92 | 11,372.08 | 7.95% | 132,859.04 | 100.94% | 143,000.00 | 100.00% | 144,344.20 | 143,000.00 | - | 1,344.20 | - | TD | 11/30/11 |
| 4097PSD | PHIL SCH DIST CORE SITE #3 | 152,497.05 | 112,836.00 | 85,954.80 | 66,542.25 | 43.64% | 86,228.88 | 100.32% | 152,497.05 | 100.00% | 152,985.04 | 152,497.02 | - | 487.99 | - | TD | 06/30/09 |
| 4260PSD | PSD-FCWINX-SOFTWARE UPDATE | 160,000.00 | 109,091.00 | 111,812.31 | 48,187.69 | 30.12% | 118,612.95 | 106.08% | 160,000.00 | 100.00% | 169,728.00 | 160,000.00 | - | 9,728.00 | - | KS | 11/30/09 |
| 4180PSD | PHILADELPHIA SCHOOLS RING #1 | 164,874.03 | 129,286.00 | 105,408.41 | 59,465.62 | 36.07% | 108,476.97 | 102.91% | 164,874.03 | 100.00% | 169,671.86 | 164,874.03 | - | 4,797.83 | - | TD | 10/09/09 |
| 4337PSD | PSD-440 BLD TURNSTILES PHS 1-2 | 389,291.00 | 255,459.00 | 248,032.40 | 141,258.60 | 36.29% | 247,712.22 | 99.87% | 389,291.00 | 100.00% | 388,784.92 | 389,291.00 | 506.08 | - | - | KS | 02/24/10 |
| 4357PSD | PSD FIRE TOWER-ACC CONTROL DRS | 569,718.00 | 409,190.00 | 392,859.10 | 176,858.90 | 31.04% | 392,372.09 | 99.88% | 569,718.00 | 100.00% | 569,034.34 | 569,718.00 | 683.66 | - | - | KS | 03/19/10 |
| | Report Totals | $ 2,495,505.96 | $ 1,722,814.00 | $ 1,508,853.32 | $ 917,262.64 | 36.76% | $ 1,600,384.82 | 106.07% | $ 2,495,505.96 | 100.00% | $ 2,562,051.74 | $ 2,494,946.83 | $ 121,505.48 | $ 188,051.26 | - | | |

Average Contract Amount          $ 71,300.17

Gross Profit Percentage Standard Deviation          38.26%

Source: K. Spressart Deposition dated August 6, 2014, Exhibits SDT-4 and SDT-5