# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| SECURITY and DATA | : | |
| TECHNOLOGIES, INC., | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | No. 12-2393 |
| | : | |
| SCHOOL DISTRICT OF PHILADELPHIA, et al., | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

_____

**Goldberg, J.**                                                              **December 20, 2016**

## Memorandum Opinion

Presently before me is Plaintiff's petition for approximately $1.2 million in fees and costs filed in conjunction with a $2.3 million dollar verdict against the School District of Philadelphia and its former Superintendent, Dr. Arlene Ackerman.

This case stems from a September 23, 2010 meeting in which Dr. Ackerman directed that Plaintiff, a highly qualified vendor, be deselected as the recipient of a $7.5 million contract. Dr. Ackerman did so illegally, on the basis of race, in blatant violation of several civil rights statutes. Further fall out from Dr. Ackerman's actions included the firing of two high level School District officials, Francis X. Dougherty, the former Deputy Chief of Operations, and John L. Byars, the former Director of Procurement Services.

Not surprisingly, numerous law suits followed. The School Districts' response was to adopt an overly aggressive litigation strategy and, as a result, over the next six years, considerable public resources were expended to defend these law suits. Electing to stridently

defend Dr. Ackerman's illegal conduct and the events stemming from that conduct has turned out to be a costly decision for the School District.

In the first case taken to trial in this district, <u>Francis X. Dougherty v. The School District of Philadelphia, et al.</u>, No. 2:12-cv-1001, Mr. Dougherty alleged that he had been terminated in retaliation for exercising his First Amendment rights in connection with the contract award. A $318,520 judgment was entered against the School District, Dr. Ackerman, and Estelle Matthews, former Chief Talent and Development Officer. After Mr. Dougherty filed a petition for attorney's fees and costs in excess of $1.5 million, that case settled for $775,000.

The case that is the subject of this opinion, involved Plaintiff, Security Data and Technologies, Inc. ("SDT"), a highly qualified company who lost a substantial contract as a result of Dr. Ackerman's discrimination. As will be exhaustively detailed herein, this case was contentiously litigated by Defendants at every turn. After less than a day of deliberations, the jury returned a verdict against Dr. Ackerman and the School District for $2.3 million, finding civil rights violations under 42 U.S.C. § 1981. The evidence supporting this verdict was, in my view, significant and compelling. SDT's subsequent motion for attorney's fees and costs in excess of a million dollars is presently before me.

A third law suit, also assigned to me, <u>John L. Byars v. The School District of Philadelphia, et al.</u>, No. 2:12-cv-121, was vigorously litigated for approximately five years, generating hundreds of docket entries. This case recently settled on the eve of trial.[1]

The petition before me specifically requests $815,281.29 in attorney's fees, $48,177.77 in costs and $433,808.77 in prejudgment interest. Raising hundreds of objections pertaining to

---

[1] A fourth case, also stemming from the contract award is pending in the Court of Common Pleas of Philadelphia County with a projected Spring 2017 trial date. (<u>See</u> <u>Augustine Pescatore v. the School District</u>, No. 111201228). In that case, Augustine Pescatore, Commander of Support Services in the School Safety Division, sued the School District of Philadelphia after he was suspended pending an investigation of the contract award.

every phase of this case, Defendants urge that these requests should be drastically reduced to $262,649.63 in attorney's fees, $11,343.15 in costs and $289,132.17 in prejudgment interest. While I agree that some fees and costs should be reduced, SDT's request will be substantially granted. For the reasons that follow, SDT will be awarded $770,224.29 in attorney's fees, $45,175.63 in costs and $473,507.36 in prejudgment interest.

## I.     LEGAL STANDARD – ATTORNEY'S FEES

Absent a statute to the contrary, litigants bear their own attorney's fees. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). The statutory authority for awarding attorney's fees in a section 1981 case is set forth in 42 U.S.C. § 1988(b) which provides: "[i]n any action or proceeding to enforce a provision of section[ ] 1981 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

For section 1988 purposes, a prevailing party may be a plaintiff or defendant. However, the standard for awarding attorney's fees to defendants differs from the standard for awarding attorney's fees to prevailing plaintiffs. Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 420-21 (1978).[2]

The Supreme Court has stated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The

---

[2] In addition to section 1988, Congress has authorized the award of attorney's fees to "prevailing parties" in numerous other statutes including the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), ("Title VII"), the Voting Rights Act Amendments of 1975, 52 U.S.C. § 10310(e), Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12205. Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 602–03 (2001). The Supreme Court has "interpreted these fee-shifting provisions consistently." Id. at 603 n.4.

result of this computation is called the lodestar. The lodestar is strongly presumed to yield a reasonable fee." Washington v. Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996). The district court, however, has the discretion to make certain adjustments to the lodestar. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

The party seeking attorney's fees must prove that its request for fees is reasonable. Id. To do so, the fee petitioner must provide evidence "supporting the hours worked and rates claimed." Id. Once the fee petitioner submits that evidence, the party opposing the fee application has the burden of challenging the reasonableness of the requested fee. McKenna v. City of Philadelphia, 582 F.3d 447, 459 (3d Cir. 2009) (citing Rode, 892 F.2d at 1183). In conducting a review for reasonableness, this Court must "go line, by line, by line through the billing records supporting the fee request." Evans v. Port Auth. of N.Y. & N.J, 273 F.3d 346, 362 (3d Cir. 2001).

## II.  DISCUSSION

### A.  Hourly Rate

As a general matter, a reasonable hourly rate is calculated according to the "prevailing market rates in the community." Washington, 89 F.3d at 1035. As such, the "starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." Pub. Interest Research Grp. of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995). The court also should consider "the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Rode, 892 F.2d at 1183.

The party seeking attorney's fees bears the burden of establishing "by way of satisfactory evidence, in addition to the attorneys own affidavits, that the requested hourly rates meet this standard." Washington, 89 F.3d at 1035 (internal citations and alterations omitted).

### i. **Michael Homans**

Mr. Homans served as lead counsel since the inception of this case. (Pl.'s Pet., Ex A., Decl. of Michael Homans ¶ 9.) Since graduating law school in 1995, Mr. Homans has focused his practice on civil rights and labor and employment law. He currently is Chairman of the Litigation Department at Flaster Greenberg and previously worked at Drinker Biddle & Reath LLP and Mager White & Goldstein. (Id. at ¶¶ 1-2.) Over the course of his career, he has tried approximately twenty civil rights and employment cases to a jury verdict or judgment. (Id. at ¶ 4.) Mr. Homans has lectured and published articles on topics relevant to civil rights and employment law. (Id. at ¶ 6.)

Multiple attorneys who practice labor law and/or discrimination law in this community submitted affidavits attesting that Mr. Homans' requested hourly rate of $520 is within the norm for someone of Mr. Homans' experience in the Philadelphia legal market. (See Pl.'s Pet., Ex. B, Decl. of Thomas J. Baron ¶¶ 8-10; Ex. C, Decl. of Sidney L. Gold ¶¶ 7-9; Ex. D, Decl. of Alice Ballard ¶¶ 12-14; Ex. E, Decl. of Ari Karpf ¶¶ 9-11; Ex. F., Decl. of Richard Swartz ¶¶ 7-9; Ex. G., Decl. of Michael Murphy ¶¶ 5-7; Ex. H., Decl. of Virginia Hardwick ¶¶ 8-10; Ex. I., Decl. of Scott Pollins ¶¶ 6-8; Ex. J., Decl. of Tiffanie Benfer ¶¶ 6-8.)

Mr. Homans also attested that $520 is his usual and customary rate charged to both hourly and contingent-fee clients. (Homans Decl. ¶ 18.). Lastly, his requested rate falls within the range of hourly rates for attorneys with 21-25 years of experience on the attorney's fees chart published Community Legal Services of Philadelphia. (Pl.'s Pet., Ex. L.)

The affidavits submitted and other supporting documents demonstrate that the requested rate of $520 is within the range of prevailing market rates in this legal community for someone with Mr. Homans' substantial experience and credentials. Additionally, the rate is warranted in

light of the quality of representation Mr. Homans afforded SDT – his submissions were consistently well written, professional and persuasive. Based on the foregoing, I conclude that Mr. Homans' requested hourly rate is reasonable.

### ii. Melissa Hazell

Mr. Homans' co-counsel, Melissa Hazell, performed the "vast majority of legal work relating to the trial and preparation for trial." (Homans Decl. ¶ 12.) After graduating from law school in 2009, Ms. Hazell worked at Pepper Hamilton, LLP and Womble Carlyle Sandridge & Rice, LLP. (Id. at ¶ 19.) Since joining Flaster Greenberg in 2012, Ms. Hazel has concentrated her practice in litigation and employment law. Ms. Hazell's customary hourly rate is $305. (Id. at ¶ 20.) This rate is within the range of hourly rates for attorneys with 6-10 years of experience on Community Legal Services of Philadelphia's attorney's fees chart. (Pl.'s Pet., Ex. L.)

The affidavits SDT obtained from attorneys who practice in this community support a finding that Ms. Hazell's requested $305 hourly rate is within the norm for someone of Ms. Hazell's experience and credentials in this legal community. (See Pl.'s Pet., Ex. B, Decl. of Thomas J. Baron ¶ 11; Ex. C, Decl. of Sidney L. Gold ¶ 10; Ex. D, Decl. of Alice Ballard ¶ 15; Ex. E, Decl. of Ari Karpf ¶ 12; Ex. F., Decl. of Richard Swartz ¶ 10; Ex. G., Decl. of Michael Murphy ¶ 8; Ex. H., Decl. of Virginia Hardwick ¶ 11; Ex. I., Decl. of Scott Pollins ¶ 9; Ex. J., Decl. of Tiffanie Benfer ¶ 9.) As such, I conclude that Ms. Hazell's requested hourly rate of $305 is reasonable.

### iii. Peter Tomasco

Prior to Ms. Hazell's involvement, Peter Tomasco assisted Mr. Homans in drafting pleadings and conducting discovery. Mr. Tomasco graduated from law school in 2006. His requested hourly rate is $350. The affidavits submitted by practicing attorneys support a finding

that this rate is consistent with the prevailing rates in this legal community. (See Pl.'s Pet., Ex. B, Decl. of Thomas J. Baron ¶ 12; Ex. C, Decl. of Sidney L. Gold ¶ 11; Ex. D, Decl. of Alice Ballard ¶ 16; Ex. E, Decl. of Ari Karpf ¶ 13; Ex. F., Decl. of Richard Swartz ¶ 11; Ex. G., Decl. of Michael Murphy ¶ 9; Ex. H., Decl. of Virginia Hardwick ¶ 12; Ex. I., Decl. of Scott Pollins ¶ 10; Ex. J., Decl. of Tiffanie Benfer ¶ 10.) Based on the foregoing, I conclude that $350 is a reasonable hourly rate for Mr. Tomasco's time.

### iv. Other Attorneys and Law Students

A number of other Flaster Greenberg attorneys performed limited work on this case and their hours are also reflected in the overall attorney's fees request. Mr. Homans describes the work performed by those attorneys as follows:

a. Elisa Bramble is a 2008 graduate of University of Virginia School of Law and worked on initial research in this case for a total of 10.5 hours. She no longer works for Flaster Greenberg, and now practices in Florida. Her time is billed here at the standard rate for seventh- and eighth-year associates, $305.

b. Justin Brown is a shareholder at Flaster Greenberg who practices estates law and assisted with keeping the Estate of Arlene Ackerman in the case. His time is charged at his standard hourly rate of $395.00.

c. Eric Clendening graduated from Washington University School of Law, cum laude, in 2013. He provided discrete research assistance for a total of 0.7 hours and his time is charged at his standard hourly rate of $280.

d. Jeff Cohen is a shareholder at Flaster Greenberg who practices construction law and commercial litigation. He assisted with the initial analysis of the case and its construction law aspects for a total of 4.2 hours. His time is charged at his standard hourly rate of $490.

e. Joanne ("Annie") Kernicky is a 2012 graduate of William and Mary School of Law, and Villanova University. I work with her frequently on civil rights and employment matters. She provided extensive research and drafting assistance for a total of 57.8 hours. Her time is charged at her standard hourly rate of $280.

f. Emily Breslin Markos graduated magna cum laude from Rutgers School of Law - Camden in 2010. I have worked extensively with her on civil rights and

employment matters. She provided extensive research and drafting assistance for a total of 66.1 hours. She no longer works for Flaster Greenberg. Her time is billed here at the standard rate for sixth-year associates, $305.

g. Scott Oberlander is a 2011 graduate of the University of Pennsylvania Law School. He provided discrete research assistance for a total of 5.6 hours. His time is charged at his standard hourly rate of $295.

h. Katherine Oeltjen is a 2004 graduate from Rutgers School of Law - Camden. She provided drafting and research assistance in the early stages of the case for a total of 141.90 hours. She no longer works for Flaster Greenberg. Her time is billed here at the standard rate for sixth-year associates, $305.

i. Damien Tancredi graduated magna cum laude from Widener University School of Law in 2009. He assisted with research and drafting in this case for a total of 9.7 hours. His time is charged at his standard hourly rate of $310.

j. Raymond Vanderhyden is a George Washington University School of Law rising 2L, who provided basic research assistance around the time of trial, for a total of 25.05 hours at $210.

(Homans Decl. ¶ 25.)

SDT has submitted affidavits from multiple practitioners who attest that the foregoing rates are all within the community norms given the particular attorney's experience. (See Pl.'s Pet., Ex. B, Decl. of Thomas J. Baron ¶¶ 13-14; Ex. C, Decl. of Sidney L. Gold ¶¶ 12-14; Ex. D, Decl. of Alice Ballard ¶¶ 17-18; Ex. E, Decl. of Ari Karpf ¶ 14; Ex. F., Decl. of Richard Swartz ¶¶ 12-13; Ex. G., Decl. of Michael Murphy ¶ 10, 12; Ex. H., Decl. of Virginia Hardwick ¶¶ 13, 15; Ex. I., Decl. of Scott Pollins ¶¶ 11, 13; Ex. J., Decl. of Tiffanie Benfer ¶¶ 11-12.) Based on my review of these affidavits and other supporting documents submitted by SDT, I conclude that the foregoing rates fall within the prevailing market rates and are reasonable.

### v. **Paralegals**

SDT also seeks to recover for less than fifty hours of paralegal services rendered by Flaster Greenberg employees Patricia D'Alessio, Victor Panieczko and Carol Feather. In support, SDT has submitted affidavits from three attorneys who attest that the requested rates for paralegal

work (Ms. D'Alessio - $260; Mr. Panieczko - $240; Ms. Feather - $190) are within the customary market rates for paralegal time in this legal community. (See Pl.'s Pet., Ex. G., Decl. of Michael Murphy ¶ 11; Ex. H., Decl. of Virginia Hardwick ¶ 14; Ex. I., Decl. of Scott Pollins ¶ 12.) I find that the requested hourly rates are reasonable in light of Ms. D'Alessio, Mr. Panieczko and Ms. Feather's experience.

### B. **Number of Hours Expended**

Before delving into an examination of the number of hours expended, I pause to make the following observations. While always prepared, defense counsel's litigation approach was to contest most issues and agree to few. Many of the hours SDT expended over the past four and a half years were the direct result of the litigation conduct of Defendants and their counsel. The sheer volume of Defendants' endless objections to the hours billed by SDT counsel is just a continuation of such tactics. As the United States Supreme Court noted in City of Riverside v. Rivera, 477 U.S. 561 (1986), a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." Id. at 581 n.11.

In its initial petition for attorney's fees, SDT submitted that counsel expended 2,059.85 hours litigating this case and that the total amount of attorney's fees incurred was $810.644.30. In support, SDT submitted timesheets with 1,008 entries. The District has objected to nearly 700 of these entries. Defendants assert that STD's overall amount billed should be reduced to $262,649.63.[3]

---

[3] After Defendants filed their response in opposition, SDT agreed that 62.6 hours should be withdrawn from its original submission. The 62.6 hours that SDT agrees should be withdrawn include 4.2 hours billed in connection with the issuance of subpoenas, 34.0 hours billed in connection with drafting a response to Defendants' motion for sanctions, and 24.4 hours Mr. Tomasco billed for research in connection with responding to Defendants' motion to dismiss. (Pl.'s Reply, Decl. of Michael Homans. ¶¶ 73, 107, 122.) I have noted the impact of these withdrawn hours on Defendants' objections where appropriate.

Although I have reviewed the 1,008 timesheet entries and Defendants' objections line by line, I address the parties' disputes through an analysis of the categories of objections raised by Defendants.[4]

### i. Number of Hours Drafting Complaint

Defendants first object to the 46.6 hours SDT counsel billed for drafting the initial Complaint and the Amended Complaint. Defendants have collected on Appendix C to all of the entries they claim SDT devoted to "drafting" these two documents. (See Defs.' Resp., App. C.) Defendants urge that these hours should be reduced to 15 because the initial Complaint only consisted of two causes of action, the Amended Complaint only consisted of one cause of action and neither pleading required extensive background investigation because the allegations were the subject of complaints filed in other cases as well as various newspaper articles. Defendants do not explain how they arrived at the 15 hour figure.

In his declaration, Mr. Homan responds that the hours spent were reasonable because the "matter involved novel claims of race discrimination by a private corporation and warranted the legal research (most of which was performed by associates), drafting, document review and research and analysis noted." (Homans Reply Decl. ¶¶ 74-78.) Mr. Homans further explains that he and the associates who worked with him were careful in drafting the complaints because they anticipated that Defendants would file motions to dismiss – which they did.

While Defendants suggest that the pleadings in this case were straightforward, they vigorously contested the plausibility of the allegations and the legal viability of the causes of action raised in the complaints. In any event, contrary to Defendants' characterization, many of the hours documented on Appendix C were not entirely devoted to "drafting" the complaints

---

[4] Defendants have grouped their objections by category on individual spreadsheets and present these spreadsheets as appendices to their response in opposition to SDT's petition.

filed by SDT. For example, Defendants have included hours counsel spent providing SDT with guidance about responding to contact from the media, researching the factual allegations and investigating out of state service issues. As such, Defendants have misrepresented the number of hours counsel spent "drafting" the complaints by including these ancillary tasks.

I have reviewed each of the entries included on Appendix C and conclude that the number of hours reflected are reasonable given the factual allegations and somewhat novel legal theories SDT pursued in this case.

## ii. <u>Number of Hours Responding to Motion to Dismiss</u>

According to Defendants, SDT's attorneys spent 73.9 hours responding to Defendants' motion to dismiss the Amended Complaint. (<u>See</u> Defs.' Resp., App. M.) Defendants urge that the motion to dismiss only raised four issues and the hours billed should, therefore, be reduced to 17.3. The majority of Defendants' argument focuses on the 59.7 hours they contend Mr. Tomasco spent preparing the response in opposition to the motion to dismiss. Defendants urge that his hours should be reduced to 10.

As noted above, SDT agreed to withdraw 24.4 hours of Mr. Tomasco's time spent researching issues in connection with the motion to dismiss. (<u>See</u> <u>supra</u> note 2.) In light of the withdrawal of these hours, SDT seeks to recover for the 35.3 hours Mr. Tomasco billed in connection with the response to the motion to dismiss and the 49.5 total hours that all of its attorneys billed for this submission.

After reviewing the hours billed, Defendants' motion to dismiss, and SDT's response thereto, I conclude that 49.5 hours – over six full eight-hour days – to research and draft the response to the motion to dismiss is slightly excessive in light of the issues raised therein. Mr. Homans billed 12.4 hours in connection with the response and I find those hours to be reasonable

in light of the tasks he completed. The 24.4 hours billed by Mr. Tomasco will be reduced to 18 hours. This reduction results in a $2,240 decrease ($350 x 6.4 hours) to the overall attorney's fee figure.

### iii. <u>Number of Hours Drafting a Motion to Compel</u>

According to Defendants, SDT's attorneys spent 24.6 hours drafting a motion to compel certain items of discovery. Defendants urge that this figure should be reduced to 4.5 hours because the motion SDT filed was "straightforward." (<u>See</u> Defs.' Resp., App. G.)

In defense of the hours expended, SDT urges that Defendants' own conduct necessitated the filing of the motion. SDT also notes that the motion sought information important to the development of its case and that the 24.6 hours billed included the filing of a reply in further support of the motion.

A review of Appendix G reflects that SDT's attorneys spent 10.2 hours drafting the motion and 14.4 hours drafting the reply. Given the particulars of the procedural history leading up to the filing of the motion and the importance of the information sought, I conclude that SDT's attorneys reasonably spent 10.2 hours drafting the motion.

That said, the 14.4 hours Mr. Homans and Ms. Oeltjen spent preparing the five page reply is slightly excessive in light of the arguments raised therein. The 10.6 hours Ms. Oeltjen spent preparing the reply will be reduced to 6 hours. A reduction of her time, rather than Mr. Homans' time, is appropriate given that her time reflects the bulk of the hours billed in connection with the reply. This reduction results in a $1,403 decrease ($305 x 4.6 hours) to the overall attorney's fee figure.

### iv.  **Number of Hours Spent Responding to Motion for Sanctions**

According to Defendants, SDT's attorneys billed 87.6 hours responding to Defendants' motion for sanctions. (See Defs.' Resp., App. K.) However, as noted above, SDT has withdrawn 34 hours of the time its attorney's spent in connection with the motion for sanctions. (See supra note 2.) After the reductions, SDT seeks to recover the following hours its attorneys expended on the task: 20.6 hours for Mr. Homans' work, 31.5 hours for Ms. Hazell's work and 1.5 hours for Ms. Oeltjen's work.

Even accounting for the withdrawn hours and the seriousness of the requested sanctions, 53.6 hours to prepare a response to the motion for sanctions is excessive. In explaining the basis for withdrawing the 24 hours, Mr. Homans stated "it does appear that we took more time than reasonable in researching and drafting this response, mainly because it occurred during Ms. Hazell's transition to the case." (Homans Reply Decl. ¶ 107.) After carefully reviewing the remaining 31.50 hours Ms. Hazell spent researching and drafting this response, I conclude that her hours were excessive in proportion to the task at hand – most likely because she was newly assigned to the case. As such, a further 15 hour reduction of her time is appropriate. This reduction results in a $4,575 decrease ($305 x 15 hour) to the overall attorney's fee figure.

**v.  Number of Hours Spent Responding to Summary Judgment
Motion**

According to Defendants, SDT's attorneys spent 279.9 hours responding to Defendants'

motion for summary judgment and Defendants' related motion to strike newspaper articles from

SDT's response. (See Defs.' Resp., App. L.)  Defendants urge that SDT should be permitted to

recover attorney's fees for only 49.2 hours spent in connection with both motions. [5]

---

[5] As an initial matter, I do not believe that the following entries were properly included on
Defendants' Appendix L as time SDT's attorneys spent "preparing" responses to the motion for
summary judgment and motion to strike:

- 2/26/15 – MDH – Telephone call and coordinate with Inquirer general counsel
  to obtain Bill Marimow and Martha Woodall declarations; receive and review
  same (.6 hours)
- 2/18/15 – MXH – Begin to draft declarations of Woodard, Marimow and
  Mayes (.9 hours)
- 2/19/15 – MXH – Continue to draft declarations of Woodard, Marimow and
  Mayes (.6 hours)
- 2/20/15 – MXH – Contact Eric Mayes re: executing the Declaration (.1 hour);
  revise Marimow, Woodard, and Mayes Certifications (.7 hours)
- 2/23/15 – MXH – Contact Eric Mayes re: executing the Declaration (.2 hours)
- 2/27/15 – MDH – Analyze reply brief on motion for sanctions (.5 hours)
- 3/11/15 – MDH – Attend portion of Dougherty trial re: SOT to gain
  intelligence on defense counsel at trial and overlapping fact and witness issues
  (2.00 hours)
- 11/4/15 – MDH – Receive and analyze Judge Goldberg's decision on
  summary judgment; contact client on same; schedule status conference and
  follow up with Melissa Hazell (1.1 hours)
- 11/4/15 – MXH – Analyze Court's opinion denying Defendants' Motion for
  Summary Judgment (.7 hours)

I will not consider these hours when assessing whether the hours SDT's attorneys expended
responding to Defendants' motions were reasonable.

Defendants contend that the time SDT's attorneys spent responding to Defendants' motion for summary judgment should be significantly reduced as follows:

|  | According to Defendants, Total Hours Spent[6] | Defendants' Proposed Adjusted Hours |
|---|---|---|
| Mr. Homans | 77.9 | 15 |
| Ms. Hazell | 76.9 | 20 |
| Ms. Oeltjen | 30 | 5 |
| Ms. Breslin | 64.3 | 3 |
| Ms. D'Alessio | .2 | .2 |
| Ms. Kernicky | 6.5 | 1.5 |
| Mr. Panieczko | 24.1 | 4.5 |
|  | 279.9 | 49.2 |

Defendants proposed reduction is ridiculous. Simply reading Defendants' motion for summary judgment, the voluminous accompanying record, the cases cited therein and the motion to strike requires a substantial number of hours. Had SDT's attorneys spent only 49.2 hours reading, researching and responding to Defendants' motions, SDT's responses would have been at best superficial. I also note that the hours billed reflect not only time spent preparing a response to the motion for summary judgment but also a surreply to that motion as well as a response to Defendants' motion to strike from SDT's response reference to certain newspaper articles.

That said, the total number of hours SDT's attorneys expended preparing their submissions exceeds six forty-hour work weeks. Although SDT's submissions were thoroughly

---

[6]The math on Appendix L is incorrect:

- Defendants state that Mr. Homans spent 77.9 hours. However, all of the entries Defendants have collected on Appendix L for Mr. Homans total 90.1 hours not 77.9.

- Defendants state that Ms. Hazell spent 76.9 hours. However, all of the entries Defendants have collected on Appendix L for Ms. Hazell total 83.8 not 76.9.

- Defendants state that Ms. Kernicky spent 6.5 hours. However, all of the entries Defendants have collected for Ms. Kernicky total 10.5 not 6.5.

researched and well written, the number of hours is excessive in light of the issues raised in Defendants' motions. After reviewing the attorneys' timesheet entries in light of the submissions, I conclude that the following reductions are appropriate:

| | Hours Billed According to Defs. | Hours Reduced | Hourly Rate | Reduction |
|---|---|---|---|---|
| Mr. Homans | 77.9 | 15 | $520 | $7,800 |
| Ms. Hazell | 76.9 | 15 | $305 | $4,575 |
| Ms. Oeltjen | 30 | 5 | $305 | $1,525 |
| Ms. Breslin | 64.3 | 25 | $305 | $7,625 |
| Ms. D'Alessio | .2 | 0 | $260 | 0 |
| Ms. Kernicky | 6.5 | 0 | $280 | 0 |
| Mr. Panieczko | 24.1 | 8 | $240 | $1,920 |
| Total: | | | | $23,445 |

As noted above, these reductions lower the overall amount of attorney's fees by $23,445.

### vi.  Number of Hours Spent on Document Production and Review[7]

According to Defendants, SDT's attorneys devoted 172.2 hours to document review.[8] Defendants urge that this number should be slashed to 30 hours. (See Defs.' Resp. App. J.) Defendants do not articulate the basis for their objections or explain how they arrived at the 30 hour figure.

Mr. Homans responds that he finds it essential to review documents himself and, if he had spent less time, he would have risked not being prepared to conduct "responsive discovery, depositions and trial, which would not have served the client well." (Homans Reply Decl. ¶ 101.)

I agree with Mr. Homans that it is entirely appropriate and perhaps economical for a senior attorney to devote time to reviewing discovery produced by an opposing party. In fact, it

---

[7] Although Appendix J is captioned as "document production and review," the hours collected appear to be devoted to document review alone.

[8] In Appendix J, Defendants state that Ms. Oeltjen spent 29.6 hours on document production/review. However, the hours Defendants compiled total 35 hours.

would be entirely inappropriate for such an attorney to formulate a trial strategy without a working knowledge of the relevant universe of documents and facts.

Defendants' suggestion that the number of hours spent reviewing documents should be drastically reduced to 30 hours is another ridiculous, frivolous suggestion. Discovery included prior depositions of numerous witnesses and a significant amount of documents. Competent attorneys would devote more than 30 hours to reviewing the voluminous documents produced to assure responsiveness and completeness, to prepare for depositions, formulate trial strategies and create exhibit lists. It is reasonable that SDT's attorneys would review some of the key documents more than once throughout this lengthy and contested litigation.[9]

That said, Mr. Tomasco alone billed 60.4 hours in connection with document production. These hours were somewhat excessive. His time was far greater than what Mr. Homans and Ms. Hazell devoted to document production and review. As such, his time will be reduced by 20 hours. This reduction lowers the overall attorney's fee by $7,000 (20 hours x $350).

### vii. <u>Number of Hours Spent on Settlement Conferences</u>

According to Defendants, Ms. Hazell expended 14.8 hours and Mr. Homans spent 26.9 hours on settlement conferences with Magistrate Judge David Strawbridge and "surrounding issues." Defendants urge that the total number should be reduced to 10.5 hours. (<u>See</u> Defs.' Resp., App. N.)[10]

---

[9] Defendants objected to the 37.7 hours Ms. Hazell spent reviewing documents in preparation for trial. Defendants urge that all of these hours should be disallowed because document review should already have been completed. For the reasons noted above, I reject Defendants' argument that SDT's attorneys should only have reviewed documents once and at the very outset of this litigation.

[10] Defendants do not present any argument in support of this set of objections. I also note that Defendants calculated the number of hours Ms. Hazell spent in connection with the settlement conference incorrectly. Ms. Hazell's hours on Appendix N equal 19.4 not 14.8. As such, the total number of hours that Defendants find objectionable is 46.3 not 41.7.

Turning to the grounds for the parties' entries to which Defendants challenge, they first object to entries for the time Mr. Homans spent with Judge Strawbridge in actual settlement conferences and discussing settlement issues with Judge Strawbridge on the phone. Defendants' objections to these particular entries are a continued example of Defendants' willingness to be unreasonably disagreeable.

That said, I do agree that the overall number of hours expended were slightly excessive. I make this conclusion in part because SDT's lawyers spent a substantial number of hours preparing their response to Defendants' motion for summary judgment. In preparing their response, SDT's attorneys surely gained a strong working knowledge of the facts and legal theories as well as the strengths and weaknesses of their case. Armed with this knowledge, they could and should have been able to effectively represent their clients at the settlement conference with fewer hours of additional preparation. As such, I will reduce both Mr. Homans and Ms. Hazell's time by five hours each. This reduction results in a $4,125 decrease ($520 x 5 hours + $305 x 5 hours) to the overall attorney's fee figure.

### viii.    Number of Hours Spent Preparing for Joe Snell's Deposition

According to Defendants, SDT's attorneys spent 8.35 hours preparing for the deposition of Joe Snell, an SDT employee. Without any actual explanation, Defendants urge that this number should be reduced to 4 hours. (See Defs.' Resp., App. O.)

The hours billed reflect time Mr. Homans and Mr. Tomasco spent getting prepared for Mr. Snell's deposition as well as 3.0 hours they spent preparing Mr. Snell to be deposed. Given that Mr. Snell was part of the SDT team who conducted the initial survey of the relevant schools, I conclude that the hours SDT's attorneys spent in connection with his deposition are reasonable.

### ix.  Number of Hours Spent Preparing for Ken Spressart's Deposition

According to Defendants, Mr. Homans spent 6.7 hours preparing for the deposition of Ken Spressart, SDT's Vice President of Sales.[11] Defendants urge that this number should be reduced to 3.5 hours. (See Defs.' Resp., App. P.)

Defendants' objection is begrudging. Mr. Spressart was involved in the events surrounding SDT's initial involvement in the project and he also had intimate knowledge about SDT's claim for lost profits. I also note that Mr. Spressart was deposed on two occasions in connection in this case. (See Pl.'s Resp. to Defs.' Mot. for Summ. J., Exs. L and P.) In light of the foregoing, it is entirely reasonable that Mr. Homans would spend 6.7 hours preparing for Mr. Spressart's deposition.

### x.  Number of Hours Spent on Pretrial Memorandum and Motions

According to Defendants, SDT's attorneys spent 150.6 hours preparing a pre-trial memorandum and litigating pre-trial motions. Defendants urge that over 100 hours should be disallowed and recovery should be limited to 48 hours. (See Defs.' Resp., App. I.)[12]

---

[11]  Appendix P lists the following three entries as pertaining to "Spressart Deposition Preparation":

- 6/13/14 – Prepare for Ken Spressart deposition (4.1 hours)
- 6/14/14 – Deposition preparation and review all summaries and reports in Pepper Hamilton investigation file (3.5 hours)
- 6/15/14 – Deposition preparation with Ken Spressart (3.2 hours)

Oddly, Defendants have captioned Appendix P as "Spressart Deposition Preparation: 6.7 hours." It appears that Defendants have added the second and third entries but not the first entry to arrive at this total. Nonetheless, any and all of the hours listed on Appendix P constitute a reasonably necessary amount of preparation.

[12]  Appendix I is not labeled as such but appears between Appendices H and J.

Ironically, it appears that approximately 100 hours of the 150 hours SDT's attorneys billed were devoted to responding to the nine pretrial motions filed by Defendants.[13] These nine motions were varied, raised numerous issues and challenged the admissibility of a variety of evidence that was essential to SDT's case at trial. Responding to several of the motions required SDT's counsel to review prior lengthy deposition transcripts. As such, SDT's attorneys reasonably devoted a significant number of hours responding to these motions. In large part, Defendants' own litigation tactics necessitated these hours and SDT is entitled to recover for the hours reasonably expended.

---

[13] Prior to trial, Defendants filed the following nine motions:

1. "Defendants' Motion to Exclude the Opinions and Testimony of John F. Maloney" (Doc. No. 129);

2. "Defendants' Motion in Limine to Preclude the Use of the Phrase 'Affirmative Action'" (Doc. No. 131);

3. "Defendant's Motion in Limine to Preclude the Testimony of Nancy Quinn" (Doc. No. 133);

4. "Motion in Limine to Preclude Francis Dougherty and John Byars from Offering Testimony Regarding Any Issues Other than the September 23, 2010 Meeting" (Doc. No. 134);

5. "Defendants' Motion in Limine to Preclude the School Reform Commission's Findings of Fact and Conclusions of Law" (Doc. No. 135);

6. "Motion in Limine to Exclude Newspaper Articles" (Doc. No. 136);

7. "Motion in Limine to Exclude Evidence Related to the Selection of IBS or Any Other Minority Contractor" (Doc. No. 137);

8. "Defendants' Motion to Limit the Trial Testimony of Jerome Paley, Kenneth Spressart and Joseph Snell to Issues Based on Their Personal Knowledge" (Doc. No. 139); and

9. "Defendants' Motion in Limine to Exclude Plaintiff's Trial Exhibits 100 and 101" (Doc. No. 140).

I note that approximately 15 of the remaining 50 hours at issue were devoted to preparing SDT's pretrial memorandum and 35 hours were devoted to preparing SDT's three motions in limine. Based on my review of SDT's timesheets, pretrial memorandum and motions in limine, 50 hours is not unreasonable. As such, I conclude that SDT will be permitted to recover for the full number of hours its attorneys billed in connection with pretrial submissions.

### xi.  Number of Hours Conducting "Superfluous Research"

According to Defendants, SDT's attorneys spent 87.7 hours conducting research not connected to its responses to Defendants' motion to dismiss, motion for sanctions, motion for summary judgment or motions in limine. Defendants urge that these hours should be reduced to 12.9 hours. (See Defs.' Resp., App. F.) As part of this proposed reduction, Defendants suggest that the 3.6 hours Mr. Homans spent on research should be disallowed.

Mr. Homans spent less than one half of one day conducting research that Defendants contend was "unconnected" to the filing of any particular motion. However, each and every entry for his time as well as his colleague's time describes the nature of his research, all of which was directly related to legal issues in this case. As such, Defendants' objection to the time catalogued on Appendix F is rejected.[14]

### xii. Number of Hours Spent Preparing for Daryl Boozer's Deposition

According to Defendants, SDT's attorneys spent twenty-four hours preparing for the deposition of Daryl Boozer. Defendants urge that this number should be reduced to five hours.

---

[14] I also note that Defendants, on several occasions, have listed the same entries twice on Appendix F. They have included twice the hours Mr. Tomasco billed on January 10, 2013, June 5, 2014, June 6, 2014 and June 9, 2014. I will give Defendants the benefit of the doubt and assume that this double counting was a typographical error and not an unfortunate attempt to inflate the number of hours SDT's attorneys expended.

(See Defs.' Resp., App. A.) Outside of a passing reference, Defendants do not explain this objection.

Daryl Boozer is the owner and President of IBS Communications, the company that was ultimately awarded the contract at issue. In support of the hours expended, Mr. Homans notes that Mr. Boozer's testimony was "crucial on the issue of confirming the odd awarding of the contract to his company (after it was pulled from SDT), the total price paid for the project, the total work involved, and in establishing whether his firm was as qualified as SDT for the work." (Homans Reply Decl. ¶ 68.) Mr. Homans also notes that Mr. Boozer was not deposed in any of the related cases and, therefore, his deposition was the only opportunity to obtain this crucial information.

I find that SDT's attorneys reasonably expended twenty-four hours preparing for the deposition of Mr. Boozer. The perhaps higher than normal hours expended are also at least partially attributable to the fact that Mr. Boozer cancelled and rescheduled the deposition several times requiring Mr. Tomasco to "reprepare" several times. (Homans Reply Decl. ¶ 68.) The thorough preparation was warranted given that Mr. Boozer's testimony was essential in establishing certain key facts at trial.

### xiii.    Number of Hours Spent on Estate Issues

According to Defendants, SDT's attorneys spent fourteen hours drafting a motion to substitute a personal representative of Dr. Ackerman's estate as a defendant in this case and a reply in further support of the motion. (Defs.' Resp., App. D.)[15] Defendants do not present any argument regarding this figure but urge without any explanation that this task was "overbilled" and that the number of hours should be reduced to six hours. (Defs.' Resp., App. D.)

---

[15] I note that the hours listed on Defendants' Appendix D total is 14.7 not 14.0 hours.

Without the benefit of any explanation of their position, I am unable to evaluate the merits of Defendants' objection. See Bell v. United Princeton Properties, Inc., 884 F.2d 713, 720 (3d Cir. 1989) ("the adverse party's submissions cannot merely allege in general terms that the time spent was excessive . . . they must generally identify the type of work being challenged, and . . . specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable"). I have reviewed the entries pertinent to the estate issue and find that the hours were reasonably necessary.

### xiv. Number of Hours Spent on Jury Instructions

According to Defendants, SDT's attorneys spent 26.8 hours preparing proposed jury instructions. Defendants urge that this number should be reduced to 9 hours. (See Defs.' Resp., App. E.)[16]

SDT accurately notes that I adopted many of its suggested jury instructions and asserts, without response from Defendants, that SDT "took the lead in drafting, revising, and filing the Joint Proposed Jury Instructions submitted by the parties." (Homans Reply Decl. ¶ 82.)

Nonetheless, I conclude that expending over three work days to compile jury instructions is excessive. I reach this conclusion in light of the fact that there was a single cause of action presented to the jury and, that although several instructions were "customized," many were largely taken verbatim from the Third Circuit model instructions.

The time Ms. Hazell spent preparing the jury instructions will be reduced by 5 hours. A reduction of her time, rather than Mr. Homans' time, is appropriate given that her time reflects

---

[16] The math on Appendix E is incorrect. Defendants state that Ms. Hazell spent 23.1 hours on jury instructions. However, all of the entries Defendants have collected on Appendix N for Ms. Hazell total 19.1 hours not the 23.1 they claim. I also note that one of the entries on Appendix E includes time for tasks unrelated to the preparation of jury instructions. (See Def.'s Resp., App. E ( 2/11/16 – MXH – "correspond re: Right to Know Request sent to School Board" (.2 hours)).

the bulk of the hours billed in connection with the jury instructions. This reduction results in a $1,525 decrease ($305 x 5 hours) to the overall attorney's fee figure.

### xv. "Miscellaneous" Overbilled Hours

According to Defendants, Mr. Homans, Mr. Tomasco and Ms. Oeltjen spent 30.65 hours on "miscellaneous" tasks and those hours should be reduced to 7.8 hours. (See Defs.' Resp., App. H.) Defendants contend that SDT's attorneys spent too many hours on these tasks and that these hours were billed at "premium rates" even though the tasks could have been completed by more junior attorneys and/or paralegals.

On Appendix H, Defendants object to certain entries on the basis that SDT's attorneys spent too much time completing particular tasks. For example, Defendants urge that the .4 hours Mr. Tomasco spent on September 28, 2014 emailing opposing counsel should be reduced to .2 hours or that the 1.5 hours Mr. Homans spent on November 11, 2014 preparing for oral argument on discovery disputes should be reduced to .7 hours. Defendants note that they have raised these "overbilling" objections throughout their objections to the hours charged in connection with particular categories of tasks. (See Defs.' Resp., Apps. A, C-P, S.)

In large part, I have considered and resolved these overbilling objections in the other sections of this opinion which address Defendants' objections that the hours billed with respect to certain categories of tasks were excessive. That said, I have again reviewed every entry that Defendants argue should be reduced or disallowed on the basis that SDT's attorneys "overbilled." I do not find that any of the hours included on Appendix H should be disallowed or reduced. SDT has adequately described each task included on Appendix H and I find that the hours expended were reasonable. Defendants have offered no substantive basis for me to conclude otherwise.

Defendants also object that SDT seeks to recover at a premium rate for "low-level" work. In connection with those objections, Defendants argue that Mr. Homans spent many hours doing work that a less senior attorney or paralegal could have done. For example, Defendants contend that it is inappropriate to bill at Mr. Homans' requested rate for hours spent drafting a discovery plan, drafting self-executing disclosures, drafting written discovery requests, conducting document review, writing first drafts of briefs and motions, drafting correspondence and preparing witnesses for deposition.

Although certain tasks could have been performed by more junior attorneys, it is reasonable and appropriate that Mr. Homans, as lead counsel, took an active and engaged role in this litigation. See Sheffer v. Experian Info. Sols., Inc., 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003) ("it is reasonable for lead trial counsel to desire to expend his or her own time on some activities that, although within the competency of less highly paid associates, are better performed by the lead counsel to ensure the smooth functioning at trial"). Nothing in my review of the hours on Appendix H discloses that Mr. Homans, Mr. Tomasco or Ms. Oeltjen billed for tasks that should have been billed at a less senior rate.

### xvi.    **"Clerical Work"**

According to Defendants, Mr. Homans and Mr. Tomasco billed 21.07 hours for clerical work and SDT should not be permitted to recover for these hours at any rate. (See Defs.' Resp., App. B.) As noted above, SDT has withdrawn 4.2 of the 8.3 hours of Mr. Tomasco's time listed on Appendix B. I conclude that the remaining 4.1 hours is a reasonable amount of time to complete the tasks Mr. Tomasco accomplished.

Regarding Mr. Homans' hours, Defendants object to eleven of Mr. Homans' timesheet entries on the basis that they constitute "clerical work." I am puzzled by Defendants' objection to

time spent by Mr. Homans' undertaking such tasks as: reviewing a complaint filed in another case which involved the same contract award at issue in this case, updating clients about an extension, reviewing a damages estimate, drafting a "deposition memo," coordinating tasks to be completed by Ms. Oeltjen and Mr. Tomasco, discussing the deposition of one of SDT's employees with Mr. Tomasco, speaking with opposing counsel, researching the possibility of consenting to trial by a magistrate judge, and revising trial exhibits. This work is exactly what lead counsel should be doing. I am hard pressed to understand how any of these tasks are "clerical" in nature.

Notwithstanding the foregoing, I agree that two entries of Mr. Homans' timesheet entries listed on Appendix B were overbilled in some fashion. On June 17, 2014, Mr. Homans billed .5 hours for the following tasks: "notice of deposition sent and depositions scheduled." On June 17, 2016, Mr. Homans billed 1.5 hours for a "visit the courtroom to review setup and technology in preparation for trial."

Both of the aforementioned tasks could be completed by a paralegal. As such, I will reduce the hourly rate applied to those 2 hours to $200. As such, $640, the difference between the requested fees and the allowable fees, ($1,040 - $400), will be subtracted from the requested award.

### xvii.    **"Unnecessary Work"**

According to Defendants, SDT's attorneys spent 129.1 hours conducting "unnecessary" work and that those hours should be disallowed in their entirety. (See Defs.' Resp., App. Q.) Defendants urge that the tasks listed on Appendix Q were "unnecessary" based on a variety of grounds.

First, Defendants urge that the time SDT's attorney spent deposing, preparing, or obtaining declarations from witnesses who were not called at trial should be disallowed.[17] I disagree. It seems obvious to state that simply because a witness was not called does not make that work "unnecessary." These efforts were reasonable because the witnesses may have proved necessary in light of the trial testimony of SDT's other witnesses or as rebuttal depending on the evidence introduced by Defendants. See Horizon Unlimited, Inc. v. Silva, 2002 WL 1896297, at *3 (E.D. Pa. Aug. 15, 2002) (reasonable to bill for hours preparing witness, even though not called, because it was necessary to "prepare witnesses in case they were required to rebut testimony offered" by an opposing party).

Defendants also object to .40 hours Mr. Homans spent reviewing Philadelphia Inquirer articles. I cannot fathom why Defendants believe that doing so was unnecessary given that the circumstances surrounding the contract award were chronicled in the local newspapers and the parties vigorously litigated the admissibility of statements attributed to Defendants in these articles.

Defendants also object to hours Mr. Homans spent conferring with Mr. Tomasco as "unnecessary." I disagree. It is entirely reasonable and prudent of Mr. Homans to confer with Mr. Tomasco and the other more junior attorneys working on the case. See Sheffer v. Experian Info. Sols., Inc., 290 F. Supp. 2d 538, 547 (E.D. Pa. 2003) ("reasonable trial preparation entails collaboration and rehearsal among attorneys"). The hours Mr. Homans spent delegating tasks,

---

[17] Defendants have objected to the hours SDT's attorneys spent in connection with its damages expert, John Maloney, on similar grounds. Defendants urge that SDT "abandoned" Mr. Maloney's testimony at trial in favor of Mr. Spressart's testimony on the issue of lost profits. I am at a loss to understand this objection. Mr. Maloney testified at trial. Simply because SDT chose to present two witnesses on the lost profits issue either as alternatives or corroboration does not mean that SDT abandoned its damages expert.

coordinating efforts and reviewing work from Mr. Tomasco and the other associates are reasonable.

Next, Defendants object to hours Mr. Homans spent conferring with counsel who represented Mr. Dougherty in his related lawsuit against the School District on the ground that there is no overlap of legal issues with Mr. Dougherty's case. Although Mr. Dougherty's case involved different causes of action, the circumstances surrounding the contract award and Dr. Ackerman's conduct are central in both cases. Any competent attorney would look into the testimony and evidence introduced in a related case.

Next, Defendants object to the hours devoted to researching and analyzing punitive damages because SDT voluntarily withdrew its request for punitive damages before trial. Such decisions, often are reasonably made in the context of a developed record and with the clarity that pretrial rulings bring.

Defendants also object to the hours SDT's attorneys spent in connection with a mock trial. Courts within this district have allowed prevailing parties to recover attorney's fees incurred in connection with mock trials under certain circumstances. See, e.g., Majestic Box Co. v. Reliance Ins. Co. of Illinois, 1998 WL 720463 *5 (E.D. Pa. Sept. 2, 1998) (finding complicated nature of defense justified use of mock trial). Given the nature of the claim – race discrimination brought by a white-owned corporation against a public school system – the use of a mock trial was a reasonable tool to prepare for trial.

That said, given the somewhat extraordinary nature of the exercise, both Mr. Homans and Ms. Hazell's attendance at the mock trial was not reasonable. Ms. Hazell's time spent preparing for the mock trial on June 13, 2016 and attending the mock trial on June 14, 2016 will be disallowed. This is appropriate because Mr. Homans presented opening and closing statements at

the real trial and questioned the majority of witnesses. This disallowance results in a $2,409.50 ($305 x 7.9 hours) reduction to the overall amount of attorney's fees requested.

Defendants have also objected to several other entries listed in Appendix Q but based on the conclusory and brief notations – (e.g. "unnecessary work" or "unnecessary and duplicative billing") – I am left to speculate the reasons behind these objections. Nonetheless, I have reviewed all of the entries listed in Appendix Q and attempted to ascertain the basis of Defendants' objections. With a single exception noted below, I conclude that the remaining hours were reasonably necessary and properly included.

On September 21, 2014, Mr. Homans billed .2 hours for "email with Andy Cohn on expert." Based on SDT's submissions, I do not know who Andy Cohn is or what role he played in this litigation. As such, I am unable to evaluate whether the .2 hours was reasonably expended. This disallowance will result in a $104 reduction ($520 x .2 hours) to the overall amount of attorney's fees.

### xviii.  **Vague Entries**

Next, Defendants object to fifty entries that they contend are too vague to be evaluated and argue that the 61.1 hours that those entries represent should be disallowed in their entirety. (See Defs.' Resp., App. R.)[18]

A fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." Rode, 892 F.2d at 1190 (quoting Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanatory

---

[18] Here, as elsewhere, Defendants have double counted a significant number of entries in Appendix R. Defendants list the following hours twice: Mr. Homans (July 25, 2014, October 3, 2014, October 13, 2014); Mr. Tomasco (June 26, 2014, July 24, 2014,); Ms. Oeltjen (September 28, 2016, September 29, 2016, two entries from October 14, 2014, October 15, 2014, October 16, 2014, October 17, 2014, October 20, 2014).

Corp., 487 F.2d 161, 167 (3d Cir. 1973)). That said, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Rode, 892 F.2d at 1190.

Descriptions such as "'research', 'review', 'prepare', 'letter to', and 'conference with'" "clearly meet the standards [set forth] in Rode." Washington, 89 F.3d at 1037. Specificity "should only be required to the extent necessary for the district court to determine if the hours claimed are unreasonable for the work performed." Id.

A single entry on Appendix R stands out for its paucity of detail. On August 21, 2014, Ms. Oeltjen billed .3 hours – the entry merely states "discovery." This description does not describe what task Ms. Oeltjen performed related to "discovery." As such, I am unable to determine whether the .3 hours was reasonably expended or not.

The remaining forty nine entries describe the task performed with much greater detail. These entries meet and exceed the standard set out in Rode. Every entry describes with sufficient particularity the task performed, the lawyer(s) that performed it and the amount of time expended. Based on the description provided, I am able to ascertain whether the hours claimed were reasonably expended.

I note that Defendants' vagueness objection to these entries are borderline frivolous. The following entry is representative of the supposedly vague entries listed on Appendix R:

- 10/21/14 (MDH) – Telephone call with John Maloney, economics expert; review file and documents on damages and send to expert (.60 hours)

I am left to wonder what degree of detail Defendants would find sufficient. There is absolutely no legal basis for requiring SDT's attorneys to document their time with any additional specificity. Defendants' objections to the timesheet entries listed on Appendix R are

denied with the exception of the .3 hours billed by Ms. Oeltjen. That disallowance results in a $91.50 ($305 x .3 hours) reduction to the overall amount of attorney's fees requested.

### xix.    Number of Hours Spent on Written Discovery

According to Defendants, SDT's attorneys spent 68 hours on preparing written discovery. Defendants urge that this figure should be reduced to 17 hours. (See Defs.' Resp., App. S.) In particular, Defendants argue that Mr. Homans' hours should be reduced from 39.4 hours to 5 hours and Mr. Tomasco's hours should be reduced from 26.6 hours to 10 hours.

SDT responds that this case involved over "13,000 pages of documents and various waves of disclosures, requests and responses over the course of four years." (Homans Reply. Decl. ¶ 135.) SDT also accurately notes that Defendants have double counted certain days in their tally. (Id. at ¶ 136.)

Defendants have objected to and included twice the hours Mr. Homans billed on December 19, 2013, January 17, 2014, January 22, 2014, January 24, 2014, and Mr. Tomasco billed on December 31, 2013, January 23, 2014, January 24, 2014, February 6, 2014, and February 7, 2014.[19] Defendants double counting inflated the numbers of hours SDT's attorneys supposedly spent on "written discovery" from 46.2 hours to 68 hours.

I note that the 46.2 hours reflected on Appendix S includes time spent drafting an initial discovery plan, reviewing Defendants' initial disclosures, drafting discovery requests and interrogatories, executing SDT's initial disclosures, drafting a subpoena to IBS, negotiating a confidentiality order with Defendants' counsel, responding to Defendants' interrogatories with input from Mr. Spressart, coordinating document production from SDT, delegating tasks amongst SDT's attorneys, sending Defendants' counsel delinquency letters, reviewing

---

[19] As explained above, I have given Defendants the benefit of the doubt and assume that this double counting was inadvertent.

Defendants' response to SDT's interrogatories, creating a witness list to produce to Defendants, and responding to Defendants' supplemental discovery requests. Given the breadth of tasks completed and the volume of documents produced in this case, I conclude that SDT's attorneys reasonably expended a substantial amount of time on "written discovery."

### C.     Lodestar

Having reviewed all of Defendants' objections, I next must determine the lodestar by multiplying the number of hours reasonably expended by a reasonably hourly rate. As noted above, the hourly rates requested by SDT's attorneys are reasonable. In the preceding sections, I have reduced the numbers of hours expended where unreasonable. Although the typical approach is to multiply these values, I have instead noted the impact each reduction has on the overall attorney's fee figure throughout the preceding sections. The resulting number would be the same if I had multiplied the reasonable number of hours by the rate at the conclusion of the foregoing analysis.

For the reasons discussed above, the following amounts will be reduced from the overall attorney's fees requested:

| Category of Objection | Reduction |
|---|---|
| Hours Responding to Motion to Dismiss | $2,240 |
| Hours Drafting a Motion to Compel | $1,403 |
| Hours Spent Responding to Motion for Sanctions | $4,575 |
| Hours Spent Responding to Summary Judgment Motion | $23,445 |
| Hours Spent on Document Production and Review | $7,000 |
| Hours Spent on Settlement Conferences and "Surrounding Issues" | $4,125 |
| Hours Spent on Jury Instructions | $1,525 |
| Clerical Work | $640 |
| Unnecessary Work | $104 |
| Total: | $45,057 |

As such, the lodestar is $770,224.29 ($815,281.29 – $45,057.00.)

**D.** **Reduction for Unsuccessful Claim against the School Reform Commission**

Noting that the jury did not find the School Reform Commission ("SRC") liable, Defendants next argue that the lodestar should be reduced by "at least one-third" because SDT was only successful against two of the three Defendants. According to Defendants, district courts have reduced lodestars to reflect partial success in this manner in the following cases: Reid ex rel. Reid v. School District of Philadelphia, 2005 WL 174847 (E.D. Pa. Jan. 21, 2005), Sheffer v. Experian Information Solutions, Inc., 290 F. Supp. 2d 538 (E.D. Pa. 2003), David P. v. Lower Merion School District, 1998 WL 720819 (E.D. Pa. Sept. 18, 1998) and Laura P. v. Haverford School District, 2009 WL 1651286, (E.D. Pa. June 12, 2009).

SDT responds that such a reduction is inappropriate because it obtained a "complete vindication of its rights" and a complete recovery of its lost profits. SDT further objects that the claim against the SRC was identical to the claim against the School District and Dr. Ackerman and, therefore, no time was expended litigating only the claim against the SRC.

If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley, 461 U.S. at 436. As such, "the court can reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." Washington, 89 F.3d at 1044 (quoting Rode, 892 F.2d at 1183). In imposing such a reduction, "[t]here is no precise rule or formula for making these determinations and the district court may "identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Hensley, 461 U.S. at 436–37.

I agree with SDT that the claim against the SRC was largely identical to the claims against the School District and Dr. Ackerman. All of these claims rely upon the same set of factual allegations and legal theories. Defendants failed to offer any substantive explanation as to how the claims were distinct or point to any specific hours that were devoted to litigating just the claim against the SRC. As such, a reduction is inappropriate because the case against the SRC, the School District and Dr. Ackerman were not distinctly different. See Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1280 (7th Cir. 1983) ("we believe that the award of attorney's fees for time expended in remedying illegal conduct should not turn on whether only some or all of the defendants named in connection with the conduct are ultimately held liable. Hensley clearly permits attorney's fees to be awarded for time spent relating to matters not 'distinctly different' from those on which the plaintiff ultimately succeeds. When defendants are not named frivolously in connection with the same illegal conduct, it follows that the matters involving the different defendants will always be 'related'").

Furthermore, none of the cases cited by Defendants support a reduction in this case. In Reid ex rel. Reid v. School District of Philadelphia, 2005 WL 174847 (E.D. Pa. Jan. 21, 2005), a special education case, the plaintiff prevailed on her Individuals with Disabilities Education Act ("IDEA") claim and was awarded a judgment in the amount of $10,000 along with certain accommodations. The district court, however, granted defendants summary judgment on the plaintiff's equal protection, Rehabilitation Act, Americans with Disabilities Act, and procedural due process claims. The district court reduced the lodestar of $114,345.00 by one half. The court explained the reduction was warranted because "[t]he success achieved by Plaintiff was far less than total. In addition to compensatory damages, Plaintiff sought a declaratory judgment and

punitive damages on six separate counts. Partial summary judgment was entered for Defendants on all but one count, and no punitive damages were awarded." Id. at *3.

In Sheffer v. Experian Information Solutions, Inc., 290 F. Supp. 2d 538 (E.D. Pa. 2003), a Fair Credit Reporting Act case, the plaintiff sought damages in excess of $300,000 but the jury awarded the "nominal amount of $1,000." The district court reduced the lodestar of $78,749.97 to $25,000 reasoning that "[i]t would be inappropriate and unreasonable to award Plaintiff for such a modest result by granting the fees Plaintiff seeks." Id. at 551.

In David P. v. Lower Merion School District, 1998 WL 720819 (E.D. Pa. Sept. 18, 1998), another IDEA case, the plaintiff successfully obtained tuition reimbursement and associated costs for his placement during ninth grade but was not awarded the compensatory education or costs he sought for his placement during seventh and eighth grades. The district court reduced the lodestar amount by one half to reflect this partial success. Id. at *5-7.

In Laura P. v. Haverford School District, 2009 WL 1651286, (E.D. Pa. June 12, 2009), also an IDEA case, the plaintiffs sought compensatory education and an order directing the school district to place the student plaintiff in a general education program full-time. The plaintiffs only obtained compensatory education. The court noted that the plaintiffs' success on the claim for compensatory education was substantial and the students' rights had been vindicated. The court concluded that a reduction of the lodestar by 25% was reasonable given "the significance of the overall relief obtained in relation to the hours reasonably expended on the litigation." Id. at *8.

Unlike all of the preceding cases, here, the jury awarded SDT the full amount of lost profits it sought to recover. The extent of SDT's success supports my determination that a reduction of the lodestar is inappropriate. See Hensley, 461 U.S. at 440 ("the extent of a

plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988"). SDT obtained full relief even though the verdict was only returned against two of the three Defendants. As such, SDT is entitled to recover the full lodestar amount. See Hensley, 461 U.S. at 435. ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee").

**E.     Costs**

SDT also seeks reimbursement for its costs including expert witness fees, deposition transcript fees, witness fees, subpoena fees, copying and express-mailing costs. (Homans Decl., Ex. 2.) Defendants object to over 70 of the 109 entries on SDT's statement of costs.

The word "costs" in section 1988 refers to the taxable costs referenced in Federal Rule of Civil Procedure 54(d)(1) and enumerated in 28 U.S.C. § 1920. Abrams v. Lightolier Inc., 50 F.3d 1204, 1224 (3d Cir. 1995) (citing West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83 (1991)). Section 1920 enumerates the following permissible costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Furthermore, the Third Circuit has held that the "following are generally recoverable under section 1988 when it is the custom of attorneys in the local community to bill their clients separately for them: (a) reproduction expenses; (b) telephone expenses of the attorney; (c) travel time and expenses of the attorney; (d) postage." Abrams v, 50 F.3d at 1225.

### i. **"Advance-Pacer" Fees**

Defendants object to a number of entries for "Advance-Pacer" as "unnecessary and unspecified." Based on SDT's descriptions, I cannot ascertain the nature of these expenses or whether the costs are reasonable. Although SDT has provided invoices for these charges, the invoices do not provide any further detail. As such, the following entries will be disallowed:

| Date | Description of Cost | Amount |
| --- | --- | --- |
| 5/31/12 | Advance-Pacer | $.50 |
| 5/31/12 | Advance-Pacer | $2.20 |
| 6/30/12 | Advance-Pacer | $.20 |
| 6/30/12 | Advance-Pacer | $6.20 |
| 7/31/12 | Advance-Pacer | $10.30 |
| 8/31/12 | Advance-Pacer | $.80 |
| 9/30/12 | Advance-Pacer | $1.20 |
| 10/31/12 | Advance-Pacer | $.40 |
| 1/31/13 | Advance-Pacer | $3.70 |
| 2/28/13 | Advance-Pacer | $1.60 |
| 9/30/13 | Advance-Pacer | $2.10 |
| 11/29/13 | Advance-Pacer | $1.30 |
| 6/30/14 | Advance-Pacer | $.20 |
| 6/30/14 | Advance-Pacer | $11.10 |
| 1/30/15 | Advance-Pacer | $2.70 |
| 2/27/15 | Advance-Pacer | $.20 |
| 2/27/15 | Advance-Pacer | $11.00 |
| 2/27/15 | Advance-Pacer | $7.70 |

| | | |
|---|---|---|
| 4/30/15 | Advance-Pacer | $2.30 |
| 11/30/15 | Advance-Pacer | $3.60 |
| 12/31/15 | Advance-Pacer | $.20 |
| 1/29/16 | Advance-Pacer | $4.10 |
| 4/29/16 | Advance-Pacer | $21.20 |
| 5/31/16 | Advance-Pacer | $323.20 |
| 2/26/14 | Photocopies – Advance | $332.10 |
| 4/30/15 | Photocopies – Advance | $205.50 |
| 5/14/16 | Photocopies – Advance | $219.60 |
| Total: | | $1,175.20 |

### ii. **Expert John Maloney**

Defendants urge that SDT "abandoned" Mr. Maloney's testimony at trial and, therefore, SDT should not be allowed to recover the costs of retaining Maloney or any other costs associated with his testimony at trial. I have previously rejected Defendants' premise that SDT abandoned Mr. Maloney's testimony at trial. (See supra note 16.) Nothing I am aware of precludes a party from offering several witnesses on the issue of damages and, perhaps doing so as an alternative basis for damages.

An award of Mr. Maloney's expert fees is permissible under section 1988 and appropriate in this case. See 42 U.S.C. § 1988(c) ("In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee"). I find the fees incurred in connection with Mr. Maloney's expert report and testimony to be reasonable.

### iii.  **Fees for Witnesses Who Did Not Testify**

Next, Defendants argue that SDT should not be permitted to recover costs associated with witnesses who did not testify at trial. SDT may recover these expenses so long as the witnesses were subpoenaed to testify at trial in good faith. See Gergel v. Chemlawn Servs. Corp., 1990 WL 87244, at *2 (E.D. Pa. June 21, 1990) (citing Quy v. Air America, Inc., 667 F.2d 1059 (D.C. Cir. 1981)); Posner v. Lankenau Hosp., 1990 WL 18250, at *1 (E.D. Pa. Feb. 26, 1990). I conclude that SDT's decision to subpoena Patrick Henwood, Jeffrey Caldwell, Joseph Snell, Bill Marimow, Martha Woodall, Robert Westall, Dr. Leroy Nunery and Amy McCole, all who did not testify at trial, was in good faith as their testimony could have been necessary and relevant depending on how evidence was presented at trial.

### iv.  **Mock Trial**

Defendants object to the costs associated with SDT's mock trial. As noted above, I have allowed SDT to recover for certain hours its attorneys devoted to this exercise. However, allowing SDT to also recover the costs associated with meals for its attorneys and/or jurors during this mock trial would be unreasonable given that the exercise was not strictly necessary. As such, the $140.81 spent on meals during the mock trial will be disallowed.

### v.  **Messenger services**

Defendants next object to messenger and courier service costs on the basis that they are part of a lawyer's overhead. The costs SDT seeks to recover in connection with messenger and courier services are reasonable in light of the magnitude and duration of the case.

### vi.  **Attorney Travel Costs**

Next, Defendants object to SDT's request for reimbursement of their attorneys' travel expenses including the costs of taxis, meals and parking.

An attorney's travel expenses are "generally recoverable under section 1988 when it is the custom of attorneys in the local community to bill their clients separately for them." Abrams, 50 F.3d at 1225. However, SDT has not established by way of affidavit or other evidence that it is customary for attorneys in this community to bill their clients separately for travel related expenses. Absent any suggestion that such a practice is customary, I will disallow these expenses. As such, SDT may not recover the following expenses:

| Date | Description | Amount |
|------|-------------|--------|
| 9/23/13 | Peter J. Tomasco: Cab fares from office to Court for Conference | $14.68 |
| 5/27/16 | Michael Homans: Amtrak to VA on 06/03 for trial testimony of Eric S. Mayes | $134.00 |
| 6/3/16 | Travel Expense: Michael Homans – Parking at 30th Street | $28.00 |
| 6/6/16 | Travel Expense: Melissa K Hazell – taxi to and from EDPA for Pre-trial Conference | $16.00 |
| 6/17/16 | Travel Expense: Melissa K Hazell – UBER to and from EDPA | $38.15 |
| 6/20/16 | Travel Expense: Melissa K Hazell – taxi to EDPA for Day 1 of Trial | $8.00 |
| 6/21/16 | Travel Expense: Melissa K Hazell – taxi to EDPA for Day 2 of Trial | $8.00 |
| 6/21/16 | Travel Expense: Raymond Vanderhyden – taxi to EDPA for Day 2 of Trial | $8.00 |
| 6/22/16 | Travel Expense: Melissa K Hazell – taxi to and from EDPA for Day 3 of trial | $18.00 |
| 6/22/16 | Travel Expense: Michael Homans/Melissa Hazell – lunch | $60.75 |
| Total: | | $333.58 |

### vii. <u>Miscellaneous</u>

Lastly, I agree with Defendants that the following entries should be disallowed because SDT failed to provide sufficient information about these costs to allow for a reasonableness assessment:

| Date | Description | Amount |
|---|---|---|
| 8/21/13 | Law Offices of Stephen C.M. Long[20] | $193.69 |
| 11/18/13 | Law Office of Alice Ballard, P.C.: Payment of one-third of attorney fees for raising estate | $581.00 |
| 5/24/13 | Law Office of Alice Ballard, P.C. Legal fees for Stephen Long of Albuquerque, New Mexico relating to the death of Arlene Ackerman | $220.00 |
| 6/24/14 | Intelius Cell phone look up | $9.94 |
| 6/25/14 | Cell Phone look up – Venture SA | $9.99 |
| 7/16/14 | Magna Legal Services – Late Cancellation fee | $125.00 |
| 1/29/16 | American Express: Lorman Education Service (re: Lost Profit Damages) | $212.93 |
| | Total: | $1,352.55 |

### viii.    <u>Reduction in Costs</u>

For the reasons stated above, the following costs will be reduced from the overall amount requested:

| Category of Objection | Reduction |
|---|---|
| "Advance-Pacer" Fees | $1,175.20 |
| Mock Trial | $140.81 |
| Attorney Travel Costs | $333.58 |
| Miscellaneous | $1,352.55 |
| Total: | $3,002.14 |

---

[20] SDT provided Stephen Long's timesheets but based on these submissions I cannot ascertain what work he performed. As such, I cannot assess whether the fees incurred were reasonable.

As such, SDT will be awarded $45,115.63 in costs ($48,177.77 - $3,002.14).

### F.     Prejudgment Interest

Lastly, SDT argues that it should be awarded prejudgment interest on the damage award of $2.3 million. SDT urges that the applicable rate is the adjusted prime overpayment rate established by the Internal Revenue Service and codified in 26 U.S.C. § 6621. (Pl.'s Pet., Ex. N.) Defendants urge that if prejudgment interest is awarded the federal post-judgment interest rate set out in 28 U.S.C. § 1961 should apply.

The decision whether to award prejudgment interest is within the sound discretion of the trial court. Robinson v. Southeastern Pennsylvania Transp. Auth., 982 F.2d 892, 898 (3d Cir. 1993). The purpose of prejudgment interest is "to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered." Berndt v. Kaiser Aluminum & Chem. Sales, Inc., 789 F.2d 253, 259 (3d Cir. 1986).

I conclude that prejudgment interest is appropriate in this case and necessary to restore SDT to the position that it would have been in absent Defendants' unlawful conduct. However, there is little guidance on what interest rate should apply to the lost profits awarded to SDT under 42 U.S.C. § 1981.

In support of their position, Defendants point to Young v. Lukens Steel Co., 881 F. Supp. 962, 978 (E.D. Pa. 1994) and Anderson v. Consolidated Rail Corp., 2000 WL 1622863, at *4 (E.D. Pa. Oct. 25, 2000), where in both cases, the court used the rate set out in 28 U.S.C. § 1961 to calculate prejudgment interest on back pay awarded under the Age Discrimination in Employment Act.

SDT, on the other hand cites to a number of cases in which the court applied the 26 U.S.C. § 6621 rate to calculate prejudgment interest on back pay awarded under Title VII. See

Frazier v. Se. Pennsylvania Transp. Auth., 814 F. Supp. 11, 12–13 (E.D. Pa. 1993) ("appropriate rate for prejudgment interest on the award of back pay in this Title VII case is the fluctuating rate pursuant to 26 U.S.C. § 6621"); Taylor v. Cent. Pennsylvania Drug & Alcohol Servs. Corp., 890 F. Supp. 360, 369 (M.D. Pa. 1995) (calculating prejudgment interest on Title VII back pay award using the overpayment rates in 26 U.S.C. § 6621(a)(1)); Taxman v. Bd. of Educ. of Twp. of Piscataway, 91 F.3d 1547, 1566 (3d Cir. 1996) (concluding that the trial court did not abuse its discretion in using the rates set in 26 U.S.C. § 6621 to calculate prejudgment interest under Title VII).

I agree with SDT that the rates set forth in 26 U.S.C. § 6621(a)(1) should apply to the damages awarded in this case. Title VII and 42 U.S.C. § 1981 share similar remedial purposes. In both contexts, prejudgment interest is an element of making whole persons who have suffered past discrimination.

When SDT was deselected for the project on September 23, 2010, the short-term interest rate was .46%. (See Pl.'s Pet., Ex. M.) That figure is rounded to the nearest full percentage point, and then three percentage points are added. 26 U.S.C. § 6621(b)(3), (a)(1). The applicable rate is 3.00%.

As such, SDT will be awarded prejudgment interest on $2,335,000.00 as follows:

| Start Date | End Date | Days | Interest Rate | Daily Interest | Interest | Total |
|---|---|---|---|---|---|---|
| 9/23/2010 | 9/22/2011 | 365 | 3.00% | $191.92 | $70,050.00 | $2,405,050.00 |
| 9/23/2011 | 9/22/2012 | 365 | 3.00% | $197.68 | $72,151.50 | $2,477,201.50 |
| 9/23/2012 | 9/22/2013 | 365 | 3.00% | $203.61 | $74,316.05 | $2,551,517.55 |
| 9/23/2013 | 9/22/2014 | 365 | 3.00% | $209.71 | $76,545.53 | $2,628,063.08 |
| 9/23/2014 | 9/22/2015 | 365 | 3.00% | $216.01 | $78,841.89 | $2,706,904.97 |
| 9/23/2015 | 9/22/2016 | 365 | 3.00% | $222.49 | $81,207.15 | $2,788,112.12 |
| 9/23/2016 | 12/20/2016 | 89 | 3.00% | $229.16 | $20,395.24 | $2,807,361.56 |
| | | | | Total: | $473,507.36 | |

Applying the 3 percent rate, compounded annually, to the lost profit damage amount that the jury awarded, SDT is entitled to $473,507.36 in prejudgment interest.

## III.    CONCLUSION

The Philadelphia School District now must bear the costs of counsel's scorched earth tactics three times over: first in the form of the jury's damages award; second through their own attorneys' surely hefty fees; and now through the payment of the attorney's fees and costs to SDT.

An appropriate Order follows.